## 45744. THOMPSON v. CROWNOVER et al.
(377 SE2d 660)

SMITH, Justice.

We granted a writ of certiorari in *Thompson v. Crownover*, 186 Ga. App. 633 (368 SE2d 170) (1988), and we reverse.

The appellant, Mrs. Thompson, was seriously burned when flames from what was left of a deteriorating gas heater ignited her clothing. She filed an action against the appellees, James L. Crownover and Crownover Electrical and Mechanical, Inc., the owners of the house in which the incident occurred.

The trial court granted the appellees' motion for summary judgment after finding that the defective condition of the heater was patent and that the appellant had equal or superior knowledge of the defect. The Court of Appeals (three judges concurred in the opinion, two concurred in the judgment only, and four dissented) generally affirmed the trial court's grant of summary judgment for the appellees.

### Facts

Mrs. Howard, the appellant's mother, leased three rooms from Mr. Crownover as a dwelling place where she lived with her two daughters and six grandchildren. Two gas heaters served as the source of heat for the rooms. At the time Mrs. Howard leased the rooms, the bedroom heater lacked the protective radiants that served as protection from the gas flames.

During the tenancy, Mrs. Howard told Mr. Crownover that the heater was dangerous and asked him to repair it. Mr. Crownover did not repair the heater, but he did authorize Mrs. Howard to repair it. He told her that she could buy the necessary protective radiants and deduct the cost from her rent. The protective radiants she purchased were not the proper size, and her attempt to repair the heater was unsuccessful. Subsequently, the top and back of the heater fell off, leaving open gas flames rising from a frame on the floor.

Mr. Crownover had actual and constructive notice of the dangerous situation on several occasions from Mrs. Howard and others. The last such notice was received by Mr. Crownover approximately one month prior to the incident. Mr. Crownover received a notice from the College Park housing inspector informing him, among other things, that the heating facilities in the property he leased were in poor condition and that the property was "unsafe for human occupancy and constitute[d a] hazard to [the] health and safety of [the]

occupants."

On the day the appellant was burned, she was alone at home. Mrs. Howard was out looking for a new place to live because the property had been declared "unsafe." Not long after the appellant was taken to the hospital, the fire inspector told Mr. Crownover that the heaters would have to be replaced. Before that day had ended, Mr. Crownover had both heaters replaced.

The appellant received burns over 36 percent of her body, requiring her to remain in Grady Hospital from January 1984 until April 1984. Thereafter she had to wear a special garment for a year and had to go to the out-patient clinic at Grady on a weekly basis.

### Landlord's Duty

1. Under traditional property law, a lessor grants and a lessee acquires an estate in the land. Thus, according to the common law, the lessor generally has no obligation to keep the tenant's estate in repair nor is he responsible for persons injured on or off the tenant's estate. However, in states that follow the common law there has been

> [d]iscontent with the appearance of unfairness in the landlord's general immunity from tort liability, and with the artificiality and increasing complexity of the various exceptions to this seemingly archaic rule of nonliability, [finally] the New Hampshire Supreme Court in *Sargent v. Ross* [113 N.H. 388 (308 A2d 528) (1973)] turned the rule on its head in 1973 and imposed on the lessor a general tort duty of reasonable care. The holding has been followed by [ten courts], and rejected by [two courts], and it is still too early to know how broadly this restructuring of landlord tort law may extend.

W. L. Prosser & W. P. Keeton, Prosser & Keeton on Torts, p. 446 (5th ed. 1984).

Georgia's statutory landlord and tenant law is unique. More than 120 years ago our General Assembly rejected the common law when it enacted Section 2261 of the 1865 Code which provided:

> When the owner of lands grants to another simply the right to possess and enjoy the use of such lands . . . and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct . . .

Ga. L. 1865, § 2261 (now OCGA § 44-7-1 (a)).

The Georgia landlord does not grant, nor does the Georgia tenant

acquire an estate. "[In a landlord and tenant relationship] the tenant has no estate, but a mere right of use, very similar to the right of a hirer of personalty." Ga. L. 1865, § 2256 (now OCGA § 44-6-101). Thus it was only natural for the General Assembly to require the landlord, the owner of the estate, to keep his estate in repair and retain liability for all substantial improvements upon his estate. "The landlord must keep the premises in repair, and is liable for all substantial improvements placed upon them by his consent." Ga. L. 1865, § 2266 (now OCGA § 44-7-13).

With this understanding of the Georgia landlord's relationship to the property and to the tenant, it was no surprise when the General Assembly in 1895 enacted another statute that imposed a duty of reasonable care on landlords. "[The landlord] is responsible to others for damages arising from defective construction, or for damages from failure to keep the premises in repair." Ga. L. 1895, § 3118 (now OCGA § 44-7-14).

Although our courts have looked to the common law in deciding landlord and tenant cases, it is clear that the General Assembly rejected the common law long ago, "and the judiciary, up until now, has simply failed to give effect to this policy in its decisions." *Country Club Apts. v. Scott*, 246 Ga. 443, 444 (271 SE2d 841) (1980).

2. The General Assembly has consistently expressed the public policy of this state as one in favor of imposing upon the landlord liability for damages to others from defective construction and failure to keep his premises in repair. The expressed public policy in favor of landlord liability is matched by an equally strong and important public policy in favor of preventing unsafe residential housing.

The General Assembly has found that people with low incomes are forced to live in unsafe housing and that such living conditions constitute a menace to the health and safety of all the residents of Georgia. The General Assembly has also found a direct correlation between unsafe residential housing and excessive financial burdens placed on municipalities, counties, and the state as a whole.[1]

3. With these important policies expressed and firmly in place,

---

[1] "It is found and declared that there exist in municipalities and counties of this state slum areas . . . [which] consume an excessive proportion of its revenues because of the extra services required for police, fire, accident, hospitalization, and other forms of public protection, services, and facilities." OCGA § 36-61-3 (a).

[T]here exist in the state insanitary [sic] and unsafe dwelling accommodations; that persons of low income are forced to reside in such accommodations . . . [which] constitute a menace to the health, safety, morals, and welfare of the residents of the state and . . . these conditions necessitate excessive and disproportionate expenditures of public funds for crime prevention and punishment, public health and safety, fire and accident protection, and other public services and facilities . . .

OCGA § 8-3-2.

the General Assembly enacted a statute in 1976, OCGA § 44-7-2, which forbids landlords from avoiding: their duty of repair, OCGA § 44-7-2 (b) (1); and their liability for failure to repair, OCGA § 44-7-2 (b) (2). It also forbids landlords from avoiding their duties created by housing codes, OCGA § 44-7-2 (b) (3).

The public policy of this state supports the position advanced by the Restatement of Law 2d, Property, § 17.6, which follows:

A landlord [should be] subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenants by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

(1) an implied warranty of habitability; or

(2) a duty created by statute or administrative regulation.

The General Assembly's mandate is clear. The landlord, the owner of the estate, cannot avoid duties created by housing codes. One of the ways in which the public policy of this state can be upheld is by subjecting the landlord to tort liability for a violation of the duties created by the housing codes and other legislation. Accord Restatement of Law 2d, Property, § 17.6 Reporter's note 3.

### Disposition of This Case

4. Prior to the time of the incident, the City of College Park adopted "The Southern Housing Code." Thus a jury must decide whether the appellees have failed to exercise reasonable care to repair the heater and whether the condition of the heater constituted a violation of the housing code.

5. The Court of Appeals found that the appellant had assumed the risk. However,

[i]ssues of negligence, including the related issues of assumption of the risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence and comparative negligence, are ordinarily not susceptible of *summary* adjudication whether for or against the plaintiff or the defendant, but must be resolved by a trial in the ordinary manner.

*Wakefield v. A. R. Winter Co.*, 121 Ga. App. 259 (174 SE2d 178) (1970).

6. The Court of Appeals held that the use of the bedroom heater was not one of "necessity" as the heater in the living room provided "a less dangerous" alternative. *Thompson v. Crownover*, supra, 186 Ga. App. 633, 636. However, the evidence regarding the condition of the living room heater was conflicting.[2] It is the jury's function to draw an inference from the evidence when more than one inference can be drawn. Also, the appellees cannot be insulated from liability simply because one portion of the premises might be "less dangerous" than the other. At any rate, it is a question for a jury to resolve.

7. A trial court's grant of summary judgment will not be sustained if there is any genuine issue of material fact. There remain genuine issues of material fact for a jury's resolution.

*Judgment reversed. All the Justices concur, except Hunt, J., who concurs specially, and Marshall, C. J., Clarke, P. J., and Weltner, J., who dissent.*

HUNT, Justice, concurring specially.

I write separately because the majority's emphasis on the landlord's conduct and the extent of the tenant's injuries tends to obscure the central issue. The central issue is not the extent of the landlord's negligence, which negligence is presupposed in a consideration of assumption of the risk as applied to Mrs. Thompson. Rather, the central issue is whether her admitted knowledge of the heater's condition acts, under the doctrine of assumption of the risk, as a bar to any recovery. But for the "rule of necessity"[3] I think it would.

Having said that, let me point out that certiorari was granted in this case to consider whether the "patent defect" rule bars recovery to the plaintiff in this case. Having implicitly decided that it does not, we should not then move into the fact-finding arena to determine whether the "rule of necessity" applies here — that is, whether, as a matter of fact, the plaintiff had a reasonable alternative to using the hazardous heater. In so doing, we are second-guessing both the trial court's and the Court of Appeals' determinations on that question.[4]

---

[2] Mrs. Howard's affidavit stated that the Gas Light Company inspector left a note stating that the "gas space *heaters*" were dangerous. When the property was declared "unfit," the notice of the housing violations stated that the "heating *facilities*" were in poor condition. Appellee James Crownover stated in a deposition that he replaced *both heaters* in the apartment after the fire inspector told him that the heaters had to be replaced.

[3] Explored by Judge Benham in his dissent joined by Judges Deen, McMurray and Pope.

[4] And, in so doing, we come no closer to reconciling the issue than did the Court of Appeals. What then does our involvement contribute to the general body of state law? See Supreme Court Rules 29 and 30 (1) regarding the criteria for the grant of certiorari.

This is not our function on certiorari and I would not reach this issue.

DECIDED MARCH 9, 1989 —
RECONSIDERATION DENIED MARCH 31, 1989.

Carr, Tabb & Pope, David H. Pope, for appellant.
Richard Eason, Jr., John C. Sumner, Rex T. Reeves, Morse &
Ontal, Jack O. Morse, for appellees.
Dennis A. Goldstein, Kay Y. Young, amici curiae.