A00A0211. FEBUARY et al. v. AVERITT PROPERTIES, INC. et al.

(528 SE2d 880)

ELDRIDGE, Judge.

Monty Febuary sued Averitt Properties, Inc., and Averitt Express, Inc. (collectively "Averitt Express") for injuries received when he fell off a loading ramp while picking up supplies for his business. The trial court granted Averitt Express' motion for summary judgment, and Febuary appeals. Because we find that no jury issue exists as to whether Averitt Express had superior knowledge of the alleged hazard, we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

(Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On appeal, this Court conducts a de novo review. *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392 (506 SE2d 910) (1998).

The facts of this case show that, in October 1995, Febuary went to Averitt Express in Macon, Bibb County, to pick up supplies for his company, Cable Direct. When he arrived at Averitt Express at noon on a clear day, he was directed to pull his truck around the back of the building to the loading ramps. Febuary drove his truck to the ramp and backed the truck up the loading ramp, so that the truck bed extended approximately three feet into the building. The ramp was eight to ten feet wide and graduated to a height of fifty inches above ground level. Ledges or curbs ran the length of each side of the ramp. These ledges were five and one-half inches in height and six inches in width and were the same color as the ramp. When parked, the driver's side of Febuary's truck was 12 to 18 inches from the ledge.

After parking the truck, Febuary claims that Ronnie Williams, an employee of Averitt Express, asked him to help load boxes into the truck bed. Febuary exited the truck on the driver's side and walked into the building. Febuary and Williams agreed that the boxes needed to be tied down, so Febuary walked down the ramp on the driver's side of the truck to retrieve a rope in the truck bed. Febuary stated that he did not remember where he was looking as he walked but admitted that there was nothing which interfered with his vision or view of the ramp.

Febuary did not remember what happened next but deposed that he *thought* that he may have tripped on the ledge. The only thing he could remember was that he felt himself falling and reached out with his right hand to steady himself. Febuary stated that his right hand was pointing away from the truck, to the outside of the ramp. He fell off the ramp and sustained injuries to his right side, including a broken right wrist.

Williams deposed, however, that he witnessed Febuary *walk down the ledge* of the ramp on the driver's side of the truck to get the rope. According to Williams' deposition, Febuary reached into the truck, and when he turned around, he appeared to lose his balance and fell. Williams stated that Febuary did not trip over the ledge before falling.[1] Williams' written accident report, completed the day after the incident, restated these observations. Febuary did not dis-

---

[1] It is undisputed that there were no foreign objects or cracks in the concrete on the ramp that may have created an uneven surface.

pute the facts in the report when it was shown to him during his deposition.

Williams took Febuary to the hospital for treatment. According to Williams, on the way to the hospital, Febuary admitted that he had lost his balance and fallen; that the accident was not Averitt Express' fault; that he did not blame Averitt Express; and that he only wanted Averitt Express to pay his medical bills. During his own deposition, Febuary restated that "I wasn't blaming anybody. It was just an accident that happened." He deposed that he originally only wanted the company to pay his medical bills but sued when the company refused to discuss payments with him.

In October 1996, Febuary sued Averitt Express, claiming that it failed to maintain and operate its premises in a safe manner. Averitt Express' motion for summary judgment was denied. After additional discovery, however, Averitt Express filed a renewed motion for summary judgment. Febuary appeals from the trial court's grant of the renewed motion. *Held*:

In his two enumerations of error, Febuary claims that jury issues exist as to (1) whether the loading ramp from which he fell constituted a hazardous condition of which Averitt Express had superior knowledge, and (2) whether he intentionally and unreasonably exposed himself to a known hazard.

Under *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997),

> in order to recover for injuries sustained in a [trip]-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. However, the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known.

Id. at 748-749. Notwithstanding this analysis,

> [a] claim involving a static defect differs from other [trip] and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom.

(Citations and punctuation omitted.) *Herrin v. Peeches Neighborhood Grill &c.*, 235 Ga. App. 528, 532 (509 SE2d 103) (1998). See also *Hannah v. Hampton Auto Parts*, supra at 394; *Dickman v. South City Mgmt.*, 229 Ga. App. 289, 291 (494 SE2d 64) (1997) (physical precedent only); *Echols v. Whisker's Food & Spirits*, 229 Ga. App. 240 (493 SE2d 722) (1997) (physical precedent only).

1. In this case, Febuary raised a jury issue as to whether the design of the ramp and/or ledge constituted a violation of various construction regulations and whether Averitt Express had knowledge of such alleged violations.[2] But even if a regulatory violation existed and Averitt Express had knowledge thereof, Febuary cannot recover if he had equal or superior knowledge of the hazard and failed to exercise ordinary care for his own safety. *Herrin v. Peeches Neighborhood*, supra at 533, n. 3; *Hannah v. Hampton Auto Parts*, supra at 395; *Brantley v. Custom Sprinkler Systems*, 218 Ga. App. 431, 433 (461 SE2d 592) (1995); see also *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. 724, 726 (2) (490 SE2d 133) (1997) (noting that "negligence per se is not liability per se").

2. (a) To this end, Averitt Express pierced Febuary's complaint by presenting undisputed evidence that Febuary had already successfully negotiated the ramp. For example, it is undisputed that Febuary had backed his truck up the ramp and into the building only minutes before the fall. Having done so, he had actual knowledge of the approximate dimensions and elevation of the ramp, as well as the potentially dangerous consequences of exceeding the parameters of the ramp. Once he parked the truck, he walked up the ramp on the driver's side of the truck, where the width of the exposed ramp was, at most, 18 inches. Moments later, he walked down the ramp on the same side to retrieve the rope. Under the circumstances, Febuary knew or should have known of the presence and potential danger of the ramp.

(b) As to whether the ramp's *ledge* constituted an allegedly hidden hazard of which Febuary was unaware, Averitt Express presented evidence that Febuary knew or should have known of the presence of the ledge along the ramp under the "plain view" doctrine.

> The "plain view" doctrine is the equivalent of the "constructive knowledge" aspect of voluntary negligence on the part of the plaintiff. Voluntary negligence is applicable when the invitee knew or should have known of the hazard and proceeded . . . , and the "plain view" doctrine is applied to a hazard in plain view at a location where it is customarily

---

[2] Notably, Williams deposed that no one other than Febuary had fallen from the ramp since it was built in 1992, despite its regular use for pickups and deliveries.

found and can be expected to be, but which the invitee professes not to have seen prior to the fall. Even [if] the invitee had no actual knowledge of the hazard before being injured, the invitee should have known of the hazard's presence.

*Robinson v. Kroger Co.*, supra at 743. See also *Tanner v. Larango*, 232 Ga. App. 599, 600-601 (502 SE2d 516) (1998); *Echols v. Whiskers Food & Spirits*, supra at 241 (wherein the plaintiff "could not have been ignorant of the step's existence but was inevitably required to negotiate it" in order to reach her destination). Compare *Flournoy v. Hosp. Auth. of Houston County*, 232 Ga. App. 791, 792-793 (504 SE2d 198) (1998) (the ramp was damp, and its nonskid coating was worn down).

On this issue, Williams deposed that he witnessed Febuary *walk down the ledge* to retrieve the rope. Williams stated that he watched as Febuary appeared to lose his balance and fall from the ledge and confirmed that Febuary *did not trip on the ledge* before falling. In response, Febuary admitted that he could not remember what happened immediately prior to the fall or where he was looking while walking. Febuary acknowledged that nothing blocked his view of the ramp or otherwise distracted him. It is undisputed that the weather was clear that day and that the fall occurred around noon. Febuary claimed, however, that the ledge was difficult to see and that he *thought* he may have tripped on the ledge before falling.

Under the circumstances, Averitt Express pierced Febuary's pleadings by demonstrating that Febuary walked down the ramp's ledge *even though* he had actual or constructive knowledge of the potentially hazardous static condition. Febuary's pure speculation as to the cause of his fall failed to present a jury issue as to whether he had equal knowledge of the condition. See *Christopher v. Donna's Country Store*, 236 Ga. App. 219, 220 (511 SE2d 579) (1999); see also *Clemmons v. Griffin*, 230 Ga. App. 721 (498 SE2d 99) (1998). Therefore, the trial court did not err in granting Averitt Express' motion for summary judgment.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 31, 2000 — ▮▮▮▮▮▮▮

*Buzzell, Graham & Welsh, Stephen M. Welsh,* for appellants.
*Chambless, Higdon & Carson, Joseph H. Chambless, David N. Nelson,* for appellees.