A03A1130. JOHNSTON v. ROSS.
(590 SE2d 386)

RUFFIN, Presiding Judge.

Luanne Johnston sued her landlord, Michael Ross, for injuries she allegedly sustained when she fell down a set of steps at the house

---

she rented as her residence.[1] Johnston appeals from the trial court's order granting Ross summary judgment. For reasons that follow, we reverse.

Summary judgment is appropriate when the evidence, construed favorably to the nonmovant, demonstrates that no genuine issues of material fact remain and that the movant is entitled to judgment as a matter of law.[2] So viewed, the record shows that Johnston fell when she lost her footing at the top of five steps leading down from the front porch of the house. Although she cannot identify why she initially lost her footing, Johnston asserts that she fell because the steps lacked handrails that she could have used to steady herself.[3] According to Johnston, once she slipped, her "normal instinct was to grab for a handrail, which was not there, so [she] fell over into the right-hand side of the yard." She alleges that the absence of handrails created a dangerous condition on the steps.

Johnston's landlord, Ross, built the house and constructed the steps without handrails. Johnston presented evidence that the lack of handrails was a violation of the applicable building code. The evidence further shows that the absence of handrails was obvious, that Johnston knew the steps had no handrails when she rented the house, and that she did not discuss this condition with Ross before her fall. Johnston had lived in the house for almost three months prior to her fall and had negotiated the steps five or six times without any difficulty. Ordinarily, however, she accessed the house by another set of steps with a handrail that led up to the side door.

Ross moved for summary judgment, arguing that Johnston's claim was barred because she knew before her fall that the front steps lacked handrails. The trial court granted the motion. Citing Johnston's "equal knowledge" of the alleged defect, Ross argues on appeal that the trial court properly granted summary judgment. We disagree.

Generally, "a landowner is not liable for injuries to an invitee arising from a patent defect on the premises preexisting the arrival of the invitee and of which the invitee knew or had the means of knowing equal to the landowner."[4] As we have noted, however, a

---

[1] Johnston based her claim on OCGA §§ 51-3-1, 44-7-13, and 44-7-14 and the common law theory of negligent construction.

[2] See *Prillaman v. Sark*, 255 Ga. App. 781 (567 SE2d 76) (2002).

[3] See *Spencer v. Little Brownie Properties*, 203 Ga. App. 324 (416 SE2d 851) (1992) (immaterial that appellant did not know what caused loss of footing on steps; allegation of negligence was that lack of handrail was proximate cause of failure to regain footing after slip). Cf. *Culberson v. Lanier*, 216 Ga. App. 686, 687 (1) (455 SE2d 385) (1995) (physical precedent only) (summary judgment proper where plaintiff failed to present evidence establishing a causal connection between her fall down stairwell and the absence of railings).

[4] (Punctuation omitted.) *Roth v. Wu*, 199 Ga. App. 665, 666 (1) (405 SE2d 741) (1991).

landlord "may not hide behind this general principle" to avoid duties imposed by statutes or housing codes.[5]

In *Bastien v. Metro. Park Lake Assoc.*,[6] we addressed a factual situation similar to this case. The plaintiff in *Bastien* sued her landlord for injuries allegedly sustained when she fell on the steps to her apartment. The steps lacked a handrail, which constituted a building code violation. The trial court found that the plaintiff's knowledge of the defect demanded summary judgment for the landlord. We reversed, holding that "although the defect was obvious when [the plaintiff] took possession of the apartment, that is not necessarily a bar to recovery when the defect is in violation of a duty created by applicable statute or administrative regulation."[7] We followed this ruling in *Watts v. Jaffs*,[8] again noting that a residential landlord may be liable for a patent defect when the defective condition contravenes a statute or regulation.

The dissent argues that *Bastien* and *Watts* improperly rely on the plurality opinion in *Thompson v. Crownover*.[9] In *Thompson*, three of our Supreme Court justices recognized the "important public policy in favor of preventing unsafe residential housing."[10] To further that policy, these justices determined that a landlord may be liable in tort "for a violation of the duties created by the housing codes and other legislation."[11] Their conclusion parallels the Restatement (Second) of Property, cited by *Thompson* and this Court with approval,[12] which subjects a landlord to liability for injury arising from failure to repair a dangerous condition existing in violation of "a duty created by statute or administrative regulation."[13] Explaining the rationale behind this provision, the Restatement drafters noted that

> the rule of this section is based on the assumption that the statute or regulation represents a legislative determination of the standard of conduct required of the landlord, so that the violation constitutes negligence per se. . . . The tort liability of the landlord in this situation tends to increase the likelihood that the will of the legislature as expressed in the statute or regulation will be effectuated.[14]

---

[5] Id.

[6] 209 Ga. App. 881 (434 SE2d 736) (1993).

[7] Id. at 882.

[8] 216 Ga. App. 565-566 (455 SE2d 328) (1995).

[9] 259 Ga. 126 (381 SE2d 283) (1989).

[10] Id. at 128 (2).

[11] Id. at 129 (3).

[12] See id.; *Bastien*, supra at 882; *Spence v. C & S Nat. Bank*, 195 Ga. App. 294, 295-296 (1) (393 SE2d 1) (1990).

[13] Restatement (Second) of Property, § 17.6.

[14] Id., comment a.

The dissent dismisses the *Thompson* policy discussion as unbinding language from a plurality opinion. But we cannot — and will not — ignore such an obvious and necessary public policy. Moreover, we agree with the Restatement drafters that "[t]he fact that the tenant . . . is aware of the dangerous condition [created by the residential building code violation] does not in and of itself mean that [this rule of liability is] inapplicable."[15]

Undoubtedly, a landlord's liability is not absolute. Landlords enjoy the usual defenses available in a negligence action, including those based on contributory negligence and assumption of the risk.[16] But such defenses present questions for a jury except in extraordinary cases, where the facts are plain and indisputable.[17] And, in cases involving housing code violations, the facts supporting these defenses will not be plain or indisputable. For example, a tenant who is aware of a condition that violates a housing code does not necessarily appreciate the danger presented — a danger that has been studied and regulated by a governing body.[18]

The dissent cites several decisions in which a claimant's equal knowledge of a dangerous condition barred recovery as a matter of law, despite a possible building code violation.[19] Those cases, however, do not involve the relationship between a *residential* tenant and landlord.[20] Furthermore, given the important public policy at issue, we find that a jury should assess the reasonableness of the tenant's conduct and the extent to which the tenant appreciates the risk of that conduct. Such result does not impose absolute liability on a

---

[15] Id., comment b. See also *Spence*, supra.

[16] See Restatement (Second) of Property, § 17.6, comment b; *Thompson*, supra at 129-130 (5) (recognizing that assumption of risk defense is available to landlord).

[17] See *Prillaman*, supra at 782; *Bossard v. Atlanta Neighborhood Dev. Partnership*, 254 Ga. App. 799, 800 (2) (564 SE2d 31) (2002).

[18] See *Prillaman*, supra ("For the defense of assumption of the risk of danger to apply, [the defendant] must show that [the claimant] had a full appreciation of the danger involved and without restriction of her freedom of choice either by the circumstances or by coercion, deliberately chose an obviously perilous course of conduct.") (punctuation omitted); *Spence*, supra (genuine issues of fact remained as to the claimant's appreciation of risk associated with walking on allegedly defective flooring, even though he knew the floor was " 'flimsy' ").

[19] See *Parks-Nietzold v. J. C. Penney, Inc.*, 227 Ga. App. 724, 726 (2) (490 SE2d 133) (1997); *Sullivan v. Quisc, Inc.*, 207 Ga. App. 114, 116 (427 SE2d 86) (1993); *Motes v. 6 'S' Co.*, 186 Ga. App. 67, 68 (366 SE2d 358) (1988) (physical precedent only).

[20] The dissent also cites *Yon v. Shimeall*, 257 Ga. App. 845, 846-847 (1) (572 SE2d 694) (2002), for the proposition that a residential tenant's equal knowledge of a defect bars recovery against a landlord, despite evidence of a building code violation. We have reviewed that case and found no clear statement in the opinion that the condition at issue violated a building code. Cf. *Culberson*, supra (indicating in dicta unnecessary to holding that plaintiff's failure to exercise ordinary care proximately caused injuries resulting when she allegedly fell down rental home's stairwell, which was constructed without surrounding railings, in violation of building code).

landlord. It simply allows a jury to decide questions regarding ordinary care and the assumption of any risk.

Our decisions in *Bastien* and *Watts* control this case. Although Johnston knew that the steps lacked handrails, she presented evidence that this condition violated an applicable building code. Under these circumstances, summary adjudication was not appropriate.[21] Accordingly, the trial court erred in granting Ross' motion for summary judgment.

*Judgment reversed. Smith, C. J., Johnson, P. J., Eldridge, Barnes, Miller, Ellington, Phipps, Mikell and Adams, JJ., concur. Andrews, P. J., and Blackburn, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Luanne Johnston claimed that the absence of a handrail caused her to fall down a set of steps at the house she rented as her residence. She sued Michael Ross, her landlord and the builder of the house, claiming Ross was liable for her injuries under OCGA § 51-3-1 for failing to keep the premises safe, under OCGA §§ 44-7-13 and 44-7-14 for failing to keep the premises in repair and defective construction, and under common law principles governing negligent construction.

As the majority concedes, it is undisputed that the landlord, Ross, built the house and constructed the steps at issue without a handrail; that the absence of a handrail was a violation of the applicable building code; that the absence of the handrail was obvious; that Johnston knew the steps lacked a handrail when she rented the house; and that Johnston had no discussion with Ross about the absence of a handrail prior to her fall. In fact, Johnston had lived in the house for about three months prior to her fall and had used the steps at issue five or six times without any problem prior to her fall. It is also undisputed that the steps at issue were not used as the primary entrance to the house, and that the primary entrance to the house was another set of steps constructed with a handrail which led up from a paved driveway and parking area adjacent to the house.

Thus, the facts are undisputed (1) that Johnston knew there was no handrail on the steps and (2) that, because the primary steps to the residence had a handrail, there was no necessity which forced Johnston to use the steps without a handrail for ingress and egress to her residence. On these facts, binding Supreme Court of Georgia authority — as set forth below — compels the conclusion that Ross was entitled to summary judgment.

As an initial matter, the record shows that at all relevant times

---

[21] See *Watts,* supra at 566; *Bastien,* supra.

Ross was an out-of-possession landlord, so the only basis for imposing tort liability on Ross was Johnston's claim brought pursuant to OCGA § 44-7-14. *Martin v. Johnson-Lemon*, 271 Ga. 120, 124 (516 SE2d 66) (1999); *Colquitt v. Rowland*, 265 Ga. 905, 906-907 (463 SE2d 491) (1995). Section 44-7-14, entitled "Tort liability of landlord," provides that:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

Johnston's claim against Ross under this section is that the steps were defectively constructed without a handrail. *Martin*, 271 Ga. at 124; *Flagler Co. v. Savage*, 258 Ga. 335, 337 (368 SE2d 504) (1988). However, given that Johnston admitted she knew the steps lacked a handrail, a long-existing line of Supreme Court authority demonstrates that Johnston cannot recover.

In *Birdsey v. Greene*, 176 Ga. 688 (168 SE 564) (1933), the Supreme Court set forth the origin and subsequent history of the statute now codified as OCGA § 44-7-14.

> [In] the Code of 1895 which was adopted by the legislature and given the effect of a statute [cit.], there was inserted for the first time § 3118, which declared: "The landlord, having fully parted with possession and right of possession, is not responsible to third persons for damages resulting from the negligent or illegal use of the premises by the tenant. But he is responsible to others for damages arising from defective construction, or for damages from failure to keep the premises in repair."

*Birdsey*, 176 Ga. at 690. The 1895 version of the statute was carried forward in subsequent codes and remains essentially unchanged today as OCGA § 44-7-14. As noted in *Birdsey* and in the historical references following § 44-7-14 in the Official Code of Georgia Annotated, this Code section is derived from the Supreme Court decision in *J. B. White & Co. v. Montgomery*, 58 Ga. 204 (1877). While *Montgomery* recognized a landlord's responsibility for damages caused by defective construction of the rented premises and failure to repair, the decision also recognized as a defense for the landlord that "the tenant knows as much about its condition as [the landlord] does." Id. at 204, hn. 1. *Birdsey* also points out that the Code section was

designed to embody the rule of law well settled at the time of its codification and was not intended to impose a harsher rule on landlords than that to which they were already subject. *Birdsey*, 176 Ga. at 690. It follows that, as originally codified, OCGA § 44-7-14 was derived from settled law that recognized a defense in favor of the landlord that a tenant who knows as much about the defect as the landlord cannot recover for damages caused by the defect.

Other Supreme Court decisions confirm this defense as settled law on tort claims by tenants arising from residential as well as commercial leased premises. In *Alexander v. Rhodes*, 104 Ga. 807 (30 SE 968) (1898), a residential tenant was denied recovery against the landlord as a matter of law for injuries caused when the tenant fell while trying to exit a house from which the steps had been removed. The court held the tenant could not recover because she saw the danger caused by the patent defect and assumed the risk. Id. at 809. In *Ball v. Walsh*, 137 Ga. 350 (73 SE 585) (1912), the court cited to numerous cases involving residential and commercial premises applying the rule that a tenant cannot recover against a landlord for injuries caused by a patent defect in the rented premises which the tenant knew about and could have avoided by the exercise of ordinary care. Id. The court denied recovery to the tenant injured by a defective railing on the porch of the rented dwelling because the tenant was aware of the patently defective condition of the railing and by the exercise of ordinary care could have avoided the injuries she incurred when she leaned against the railing and it gave way. Id. at 351. In *Donehoe v. Crane*, 141 Ga. 224 (80 SE 712) (1913), the tenant sued the landlord for injuries caused by defective steps leading up to her rented residence. The Supreme Court sustained the trial court's dismissal of the complaint holding that the defect was known to the tenant. "The defect, therefore, was just as obvious to the plaintiff as it would have been to the defendant; and that being so, the plaintiff could by the exercise of ordinary care have avoided the consequences to herself of the alleged negligence of the defendant." Id. at 225. Adhering to the above Supreme Court authority, this Court has also held that a landlord is not liable for injury to a tenant caused by a patent defect of which the tenant had knowledge. *Hearn v. Barden*, 115 Ga. App. 708 (155 SE2d 649) (1967).

Because Johnston admits she was aware of the absence of a handrail on the steps, the above Supreme Court authority requires dismissal of her defective construction claim under OCGA § 44-7-14. Contrary to the majority's holding, this result is required despite evidence showing that the absence of a handrail was a building code violation.

In *Thompson v. Crownover*, 259 Ga. 126 (381 SE2d 283) (1989), the Supreme Court addressed a residential tenant's claim against

her landlord for injuries she received arising from a patent defective condition in her apartment which evidence showed was also a building code violation. The trial court granted summary judgment in favor of the landlord and the Court of Appeals affirmed based on the tenant's admitted knowledge of the defect. *Thompson v. Crownover*, 186 Ga. App. 633 (368 SE2d 170) (1988). The facts showed that the tenant was seriously burned by a defective gas heater at her apartment. The tenant knew about the defect prior to the injury and had informed the landlord of the defect and repeatedly complained that it needed to be repaired. *Thompson*, 259 Ga. at 126. The landlord failed to repair the defect prior to the injury despite evidence that the defect was a housing code violation and that the housing inspector informed the landlord the defect rendered the tenant's apartment unsafe for occupancy. Id. at 126-129. On these facts, a four justice majority of the Supreme Court (with three justices joining in a plurality opinion and one justice writing a special concurrence to the plurality) reversed the Court of Appeals and concluded that the tenant's knowledge of the patent defect did not bar her suit against the landlord to recover for her injuries under OCGA § 44-7-14. The remaining three justices dissented.

The Supreme Court's splintered decision in *Thompson v. Crownover* requires a careful analysis to determine its effect on the rule that a tenant's knowledge of a patent defect bars recovery. Three of the justices comprising the four justice majority joined in a plurality opinion and took the position: (1) that Georgia public policy favored imposing liability on landlords for damages to others caused by defective construction and failure to repair; (2) that an equally strong public policy favored preventing unsafe residential housing; (3) that the General Assembly has found low income citizens are forced to live in unsafe housing under conditions that constitute a menace to health and safety; and (4) that the General Assembly has also found a direct correlation between unsafe residential housing and excessive financial burdens on cities, counties, and the state. *Thompson*, 259 Ga. at 128. Pointing to Code sections supporting these public policies, the three justices cited to OCGA § 36-61-3 (a) concerning urban redevelopment in "slum areas" and to OCGA § 8-3-2 which states that persons of low income are forced to reside in "unsanitary and unsafe dwelling accommodations." *Thompson*, 259 Ga. at 128. The three justices then noted that the General Assembly enacted OCGA § 44-7-2, which provides that in a lease or other agreement for the use of property as a dwelling place a landlord cannot avoid the duties set forth in OCGA § 44-7-14 relating to liability of the landlord for failure to repair (OCGA § 44-7-2 (b) (2)), and "also forbids landlords from avoiding their duties created by housing codes, OCGA § 44-7-2 (b) (3)." *Thompson*, 259 Ga. at 129. Section 44-7-2 (b) (3), cited by the three

justices as the Code section creating a duty to comply with housing codes, states that landlords may not use lease agreements to avoid "[o]rdinances adopted pursuant to Code Section 36-61-11." Section 36-61-11 is entitled "[r]epair, closing, and demolition of dwellings unfit for human habitation."

At the conclusion of this analysis, the three justices in the *Thompson* plurality found that Georgia public policy supports the position set forth in the Restatement of Law 2d, Property, § 17.6 which they quoted as stating that:

> A landlord [should be] subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenants by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:
> (1) an implied warranty of habitability; or
> (2) a duty created by statute or administrative regulation.[22]

*Thompson*, 259 Ga. at 129 (bracketed insert in original). Finally, the three justice plurality concluded that:

> The landlord, the owner of the estate, cannot avoid duties created by housing codes. One of the ways in which the public policy of this state can be upheld is by subjecting the landlord to tort liability for a violation of the duties created by the housing codes and other legislation.

Id.

In disposing of the case, the three justice plurality stated that it was a jury issue as to whether the landlord exercised reasonable care to repair the heater and whether the heater constituted a housing code violation. *Thompson*, 259 Ga. at 129. Noting that the Court of Appeals found that the tenant had assumed the risk,[23] the three justice plurality stated this was also a jury issue. Id. Finally, the three justice plurality addressed the issue of whether the "necessity rule" applied. The "necessity rule" recognizes that a tenant who has knowl-

---

[22] The three justice plurality did not point out that official comment b to the quoted Restatement section provides that a landlord subjected to tort liability under the section "has available all the usual defenses to an action in negligence, including contributory negligence and assumption of risk."

[23] Citing Supreme Court of Georgia precedent, the Court of Appeals found that the tenant's admitted knowledge of the defect compelled the conclusion that she assumed the risk of injury and was barred from recovery. *Thompson*, 186 Ga. App. at 633-636.

edge of a patent defect that would ordinarily bar recovery is not barred from recovery where a factual issue exists as to whether the tenant had no alternative but to confront the defect and assume the risk of injury. See *Phelps v. Consolidated Equities Corp.*, 133 Ga. App. 189, 193 (210 SE2d 337) (1974); *Hull v. Massachusetts Mut. Life Ins. Co.*, 142 Ga. App. 269 (235 SE2d 601) (1977); *Fitzgerald v. Storer Cable Communications*, 213 Ga. App. 872, 874 (446 SE2d 755) (1994). The Court of Appeals concluded in *Thompson*, 186 Ga. App. at 636, that the "necessity rule" did not apply because the tenant was not forced to use the defective heater and had an alternative source of heat. On this issue, the three justice plurality found a jury question was presented based on conflicting evidence. *Thompson*, 259 Ga. at 130.

The fourth justice in the four justice majority in *Thompson v. Crownover* did not join in the three justice plurality opinion but wrote a special concurrence to the plurality. *Thompson*, 259 Ga. at 130. The special concurrence criticized the plurality opinion's focus on the landlord's conduct, said that it obscured the central issue, and stated that:

> The central issue is not the extent of the landlord's negligence, which negligence is presupposed in a consideration of assumption of the risk as applied to [the tenant]. Rather, the central issue is whether [the tenant's] admitted knowledge of the heater's condition acts, under the doctrine of assumption of the risk, as a bar to any recovery. But for the "rule of necessity" I think it would.

(Footnote omitted.) Id. Thus, the fourth justice in the four justice majority found that, despite evidence the defect was a building code violation, the tenant's knowledge of the defect would bar her recovery under the "patent defect" rule, but for the "necessity rule." Id.

The above analysis of the Supreme Court's decision in *Thompson v. Crownover* demonstrates that only three of seven justices took the position in the plurality opinion that a tenant's knowledge of a patent defect does not bar the tenant's recovery where the defect is a violation of a building code. Four of the seven justices (three dissenting and one concurring specially) rejected that position. It follows that the holding in *Thompson v. Crownover* is the single rationale for the judgment line agreed to by the four justices in the majority — that a jury issue remained as to application of the "necessity rule." See *Marks v. United States*, 430 U. S. 188, 193 (97 SC 990, 51 LE2d 260) (1977) (plurality position cannot constitute the holding of a fragmented court where there is another rationale explaining the result that was agreed to by a majority of the court). Accordingly, *Thomp-*

*son v. Crownover* did not overrule the "patent defect" rule in building code violation cases and the rule still applies as set forth in prior Supreme Court decisions.

The Supreme Court's retention of the "patent defect" rule reaffirmed the application of traditional negligence principles in tort claims by tenants under OCGA § 44-7-14. Although a landlord's violation of a building code is negligence per se, proving negligence per se does not establish liability per se, and it does not foreclose a determination as a matter of law that the tenant's contributory negligence or assumption of the risk was the sole proximate cause of the injury. See *Parks-Nietzold v. J. C. Penney, Inc.*, 227 Ga. App. 724, 726 (490 SE2d 133) (1997); *Sullivan v. Quisc, Inc.*, 207 Ga. App. 114, 116 (427 SE2d 86) (1993); and *Motes v. 6 'S' Co.*, 186 Ga. App. 67 (366 SE2d 358) (1988) (all holding that, even if the claimant showed a patent defect in the premises was negligence per se as a violation of a building code, the claimant's equal knowledge of the defect barred recovery). Applying these principles, the "patent defect" rule recognizes that a tenant with knowledge of a patent defect who has assumed the risk of injury, or could have avoided the defect by the exercise of ordinary care, is barred from recovery in the same manner as other tort claimants. See *Union Camp Corp. v. Helmy*, 258 Ga. 263, 267 (367 SE2d 796) (1988); *City of Winder v. Girone*, 265 Ga. 723, 724 (462 SE2d 704) (1995). As we held in *Hall v. Thompson*, 193 Ga. App. 574, 575 (388 SE2d 381) (1989), a case where the tenant's equal knowledge of the defect barred recovery, "the classic rules of negligence still apply in this state . . . [and] [n]othing in *Thompson [v. Crownover]* imposed an absolute liability upon landlords, nor do we believe the Supreme Court intended to do so." Accord *Yon v. Shimeall*, 257 Ga. App. 845, 846-847 (572 SE2d 694) (2002) (holding a residential tenant's equal knowledge of a defect in steps barred recovery against the landlord, despite evidence that the steps constituted a building code violation).[24]

The Supreme Court's holding in *Thompson v. Crownover* did, however, temper the application of the "patent defect" rule. Four justices (three justices in the plurality and one justice concurring specially) joined in the judgment line reversing the decision of the Court of Appeals and agreed that, even if the tenant had knowledge of the

---

[24] Because it is undisputed that Johnston never discussed the absence of a handrail with Ross, and Ross made no assurances to Johnston about repairing the defect, this case is not concerned with application of the "patent defect" rule where a tenant has relied on assurances of repair. See *Richardson v. Palmour Court Apts.*, 170 Ga. App. 204 (316 SE2d 770) (1984) (holding five judges to four that tenant with knowledge of patent defect was not barred from recovery where landlord made assurances of repair; dissent asserting that Supreme Court authority applying "patent defect" rule barred recovery).

defect, she was not barred from recovery because a jury issue existed as to application of the "necessity rule." Accordingly, the four justice holding in *Thompson v. Crownover* sanctioned the line of Court of Appeals decisions, suprà, applying the "necessity rule" in tort claims by tenants. The holding also implicitly overruled decisions such as *Alexander v. Rhodes*, 104 Ga. 807; *Clements v. Blanchard*, 141 Ga. 311 (80 SE 1004) (1914); and *Hearn v. Barden*, 115 Ga. App. 708, to the extent they held that the "patent defect" rule bars a tenant's recovery despite evidence under the "necessity rule" that the tenant was forced to confront the defect.

In the present case, it is undisputed that Johnston knew there was no handrail on the steps she was using when she fell. The record also shows that there was no necessity which forced Johnston to use the steps without a handrail, nor does Johnston make any claim of necessity. To the contrary, the record shows there was another entrance to the house which had steps with a handrail which was used by Johnston as the primary entrance. In the absence of any claim of necessity, Johnston's admitted knowledge that the steps lacked a handrail barred her recovery under the "patent defect" rule. *Birdsey v. Greene*, 176 Ga. 688; *Alexander v. Rhodes*, 104 Ga. 807; *Ball v. Walsh*, 137 Ga. 350; *Donehoe v. Crane*, 141 Ga. 224; *Thompson v. Crownover*, 259 Ga. 126.

Nevertheless, the majority, ignoring the above Supreme Court of Georgia authority to the contrary, adopts and extends a public policy-based rule that was rejected by four of seven justices in *Thompson v. Crownover*, 259 Ga. 126. According to the majority, in cases involving housing code violations, no set of plain or undisputed facts can be sufficient to entitle a landlord to summary judgment. Under the one example of this rule provided by the majority, even though a tenant knows about a dangerous condition that violates a housing code, summary judgment for the landlord is not possible because the tenant "does not necessarily appreciate the danger presented . . . that has been studied and regulated by a governing body." By this logic, a landlord's per se negligent violation of any building or housing code forecloses a determination on summary judgment that the plain and undisputed facts show the tenant's contributory negligence or assumption of the risk was the sole proximate cause of the injury. Even the three justice plurality which endorsed the public policy analysis undertaken in *Thompson v. Crownover* did so only in the context of a housing code violation which rendered the entire residence uninhabitable. The majority has now extended the public policy analysis rejected by four justices in *Thompson v. Crownover* to all housing code violations regardless of context. Not only does the majority's holding fly in the face of Supreme Court decisions in ten-

ant tort claims against landlords, if the same logic was applied to all tort cases involving matters "studied and regulated by a governing body," it would have the ludicrous result of precluding the application of summary judgment in every case in which the claimed negligence was a violation of a governmental code, regulation, or statute of any kind.

In support of this rule, the majority cites *Bastien v. Metro. Park Lake Assoc.*, 209 Ga. App. 881 (434 SE2d 736) (1993). On facts similar to the present case, *Bastien* concerned a residential tenant who was injured when she fell while negotiating steps leading to her rented apartment which lacked a handrail in violation of a building code. There was no evidence in the case that the tenant was forced by necessity to encounter the steps without the handrail. Even though it was undisputed that the lack of a handrail was a patent defect of which the tenant had knowledge prior to her fall, the decision in *Bastien* held that the tenant's knowledge of the defect did not preclude recovery because the defect violated a building code. Id. at 882. In support of this holding *Bastien* quoted portions of the three justice plurality opinion in *Thompson v. Crownover*, 259 Ga. 126, for the proposition that a landlord cannot avoid duties created by housing codes. *Bastien*, 209 Ga. App. at 882. Based on this authority, *Bastien* rejected application of the "patent defect" rule and held that the trial court erred by granting summary judgment in favor of the landlord. Id.

As demonstrated by the above detailed analysis of the Supreme Court's decision in *Thompson v. Crownover*, the plurality opinion of only three justices in that decision did not and could not overrule prior Supreme Court authority holding under the "patent defect" rule that a tenant with knowledge of the defect is barred from recovery. Since there was nothing in *Bastien* showing the "necessity rule" was applicable, the "patent defect" rule as set forth in the Supreme Court decisions in *Birdsey v. Greene*, 176 Ga. 688; *Alexander v. Rhodes*, 104 Ga. 807; *Donehoe v. Crane*, 141 Ga. 224; and *Thompson v. Crownover*, 259 Ga. 126, barred recovery by the tenant. The three justice plurality opinion in *Thompson v. Crownover* is not authority to the contrary. Because the Court of Appeals is bound by the Georgia Constitution and the doctrine of stare decisis to follow the decisions of the Supreme Court, we are not at liberty to decline to follow the "patent defect" rule as decided by that Court. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. Accordingly, *Bastien*, 209 Ga. App. 881, and *Watts v. Jaffs*, 216 Ga. App. 565 (455 SE2d 328) (1995) (which relied on *Bastien* and the three justice plurality in *Thompson v. Crownover* to reach a similar result), should be overruled to the extent they contra-

vene the decisions of the Supreme Court establishing and applying the "patent defect" rule in tort claims by tenants against landlords.[25]

The trial court correctly granted summary judgment in favor of Ross because the plain and undisputed facts show Johnston knew about the patent defect and there were no circumstances raising an issue under the "necessity rule."

I am authorized to state that Presiding Judge Blackburn joins in this dissent.

DECIDED NOVEMBER 21, 2003 — 

*Kardos, Warnes & McElwee, John E. Kardos,* for appellant.
*Blasingame, Burch, Garrard, Bryant & Ashley, Andrew J. Hill III, Josh B. Wages,* for appellee.

---

[25] Although the Supreme Court denied a writ of certiorari in *Bastien* (209 Ga. App. 913) and granted a writ of certiorari in *Watts* (216 Ga. App. 905), then vacated the writ (218 Ga. App. 905), these actions had no effect on the "patent defect" rule as previously established in binding Supreme Court decisions. "The denial of a writ of certiorari by the Supreme Court is not binding as a precedent in another case, and does not come within the doctrine of stare decisis." (Citation and punctuation omitted.) *Scott v. Scott,* 276 Ga. 372, 375, n. 2 (578 SE2d 876) (2003).