A05A1057. TRANS-VAUGHN DEVELOPMENT CORPORATION
v. CUMMINGS.

(615 SE2d 579)

BERNES, Judge.

Defendant Trans-Vaughn Development Corporation appeals from the trial court's order denying its motion for summary judgment. Trans-Vaughn contends the trial court erred in denying its motion because the undisputed material facts show that plaintiff Shelley Cummings had equal knowledge of the alleged dangerous condition of the entranceway where she slipped and fell. We agree and reverse.

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Botterbusch v. Preussag Intl. Steel Corp.*, 271 Ga. App. 190 (609 SE2d 141) (2004). In evaluating whether summary judgment is proper, the evidence and all reasonable inferences drawn therefrom must be construed in the light most favorable to the nonmovant. Id. With these principles in mind, we turn to the facts of the present case, relying for our decision only on those facts that are not in dispute or that have been construed in the light most favorable to Cummings.

*The slip and fall incident.* Cummings was injured in a slip and fall incident that occurred when she was exiting from the premises occupied by her employer, the Coweta County Department of Family and Children Services ("DFCS"), which in turn leased the premises from Trans-Vaughn.[1] Cummings began working as a case manager for DFCS on April 16, 1999. From the time she began her tenure with DFCS until the time of the slip and fall incident, Cummings worked in the office building where the incident occurred.

On the date of her injury, February 6, 2001, Cummings arrived at work with her infant son because she had to take him to a doctor's appointment later that morning. It was a typical February morning — a little cloudy, but not dark and no rain. While carrying her son in an infant car seat, Cummings entered the office building through the same rear entrance that she always entered to get to her office.[2] She

---

[1] During pretrial litigation, DFCS filed a motion to intervene to protect its right of subrogation under the Georgia Workers' Compensation Act. The trial court granted the motion. DFCS has not joined in this appeal.

[2] The rear entrance used by Cummings was the closest one to where she parked. There was a side entrance to the office building that DFCS workers were not allowed to use because it went directly into the private office of the DFCS Director. As to the front entrance, DFCS workers were "discouraged" from entering the building in that manner because clients entered through that doorway, and entry required "someone at the front desk to buzz [you] through the door." However, there was another building entrance that was approximately a minute away from where Cummings parked that she could have used while carrying her infant. That entrance did not have any steps; rather, it was a handicap accessible entrance. Cummings also testified that

had been through the same entrance before carrying her son in the carrier. Nothing had changed about the rear entrance, which had four outside steps without a handrail or stairway landing, since the time she began working for DFCS. Cummings "was well aware that the rear stairs were of uneven height, that the door opened out directly onto the staircase, that the door handle was difficult to grab, and that there was no landing or handrail." Cummings also was aware that the door to the rear entrance had always been "free-swinging" and lacked "tension" to prevent it from flinging open.

Later that morning, Cummings attempted to leave the building through the same rear entrance while carrying the infant carrier in her left hand. She opened the door with her right hand, and as the door swung open and she started down the stair steps, Cummings slipped and fell, severely injuring her knee and leg. There was nothing on the steps, such as a leaf or other object, that would have caused the fall. Rather, Cummings alleges that she fell and injured herself because the stairs did not have a landing at the top but instead dropped off immediately below the door to the first step, and since there was no handrail for her to grab onto and prevent her fall once she lost her balance.

*The history of the office building and rear entrance.* In 1992, Trans-Vaughn purchased the office building where the incident occurred and subsequently leased the space to DFCS in 1993. At the time it was purchased by Trans-Vaughn, the building was used as commercial office space, but it had previously been a skating rink and bowling alley. Prior to when DFCS took occupancy of the building, Trans-Vaughn had the space remodeled in order to fit the specific needs of DFCS. The rear entrance and stairs where Cummings fell pre-existed the purchase of the building by Trans-Vaughn, and they were not renovated or altered in any way as part of the remodeling project.

Prior to when Cummings fell, DFCS had not received any complaints about the rear entrance or its stairs. Nor was Cummings aware of anyone else falling while entering or exiting through the rear entrance during her tenure with DFCS. Trans-Vaughn also was unaware of any prior injury having occurred there.

*Alleged building code violations.* There is a fierce dispute between the parties over whether the rear entrance was defectively constructed and in violation of the relevant building codes at the time of the slip and fall incident, and over whether Trans-Vaughn had

---

she "certainly" would have used another entrance if she had known she was going to fall while exiting from the rear entrance. Thus, she did not have to use the rear entrance by necessity. See *Yon v. Shimeall,* 257 Ga. App. 845, 848-849 (2) (572 SE2d 694) (2002).

prior knowledge of the purported violations. Cummings contends that the applicable building codes required that the rear entrance have a landing and handrails. Cummings further argues that Trans-Vaughn knew that the rear entrance was not up to code when it remodeled the office building in 1992 because its architect notified the company of the violations and drafted architectural plans to correct the code violations. Cummings contends that Trans-Vaughn ignored these plans and instead chose to renovate the building without making any corrections to the rear entrance.

In contrast, Trans-Vaughn argues that the architectural plans containing the drawing of a rear entrance with a landing were the result of the architect's mistaken assumption (having at that time not yet viewed the entire premises) that the rear entrance already had a landing *prior* to the renovations. Trans-Vaughn further contends that the applicable building codes, as those codes were implemented by Coweta County, did not require that a landing or handrails be added to the rear entrance as part of the remodeling project. Finally, Trans-Vaughn emphasizes that it received a Certificate of Occupancy from Coweta County following the remodeling project that approved of the work that had been done and that did not require the company to perform any work on the rear entrance.

Arguing that the factual dispute between the parties concerning building code violations was irrelevant under the circumstances, Trans-Vaughn moved for summary judgment. Trans-Vaughn contended that the undisputed evidence demonstrated that Cummings had equal knowledge of the static defect in the entranceway, thus preventing her recovery as a matter of law, regardless of whether any building codes had been violated. The trial court denied the motion, and Trans-Vaughn applied for interlocutory review by this Court. We granted the application on November 1, 2004.[3]

Our review of the trial court's summary judgment ruling is de novo. *Botterbusch*, 271 Ga. App. at 190. We begin by noting that *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997), sets forth the basic framework for analysis in premises liability cases involving slip and fall incidents:

in order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had

---

[3] Cummings has renewed her motion to dismiss originally filed simultaneously with her brief in opposition to Trans-Vaughn's application for interlocutory appeal on October 25, 2004. Her motion is based on the argument that service of Trans-Vaughn's application for a certificate of immediate review was not perfected properly under OCGA § 5-6-34 (b). We implicitly rejected that argument when we granted Trans-Vaughn's application. Therefore, we deny Cummings' motion as moot.

actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. However, the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed [her]self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known.

Although *Robinson* sets forth the general rule, "[o]ur cases have distinguished claims involving static defects from other slip and fall cases," where the so-called equal knowledge exception can apply to preclude recovery. *Mechanical Equip. Co. v. Hoose*, 241 Ga. App. 412, 413 (523 SE2d 575) (1999).

Notwithstanding [the *Robinson*] analysis, a claim involving a static defect differs from other [slip] and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have [equal] knowledge of it and cannot recover for a subsequent injury resulting therefrom.

(Citations and punctuation omitted.) *Febuary v. Averitt Properties*, 242 Ga. App. 137, 139 (528 SE2d 880) (2000). See also *Gantt v. Dave & Buster's of Ga.*, 271 Ga. App. 457 (610 SE2d 116) (2005).

Cummings testified that she had negotiated the rear entrance previously on multiple occasions, including on at least one occasion with the infant carrier. Furthermore, Cummings concedes that she was aware that the stairs lacked handrails or a stairway landing, that the door handle was difficult to grab, and that the door lacked any device preventing it from quickly swinging open without tension. Accordingly, even assuming that the structure of the rear entranceway was defective, Cummings "had equal knowledge of the defects that allegedly caused her injuries," precluding her recovery for damages sustained in the slip and fall incident. (Citations omitted.) *Young v. Richards Homes, Inc.*, 271 Ga. App. 382, 383 (2) (a) (609 SE2d 729) (2005).[4]

---

[4] See also *Yon*, 257 Ga. App. 845 (no recovery even though stairs lacked handrail because plaintiff's prior use of stairs showed equal knowledge of the defect); *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392, 394-395 (506 SE2d 910) (1998) (plaintiff found to have equal knowledge of defective condition of steps when he had traversed steps on numerous previous occasions); *Hallberg v. Flat Creek Animal Clinic*, 225 Ga. App. 212 (483 SE2d 671) (1997) (previous use of

We are not persuaded by Cummings' arguments to the contrary. She contends that summary judgment is inappropriate because there is a genuine issue of fact over whether the structure of the rear entrance violated applicable building codes. She further argues that there is a factual dispute over whether Trans-Vaughn had superior knowledge of the alleged defects based on its purported awareness of the code violations at the time of the remodeling in the early 1990s. However, because Cummings had knowledge of the defects in the rear entrance due to her repeated use of the entranceway, summary judgment is proper, irrespective of whether the rear entrance violated applicable building codes, and regardless of whether Trans-Vaughn knew of these violations beforehand but did nothing about them. See *Wood v. Winn-Dixie Stores*, 244 Ga. App. 187, 190 (534 SE2d 556) (2000) ("Wood claims the absence of slip-resistant paint on the ramp constituted a violation of [American National Standards Institute] standards and local ordinances. Even if such violations were proved and the defendants knew they existed, Wood cannot recover because she had equal knowledge of the alleged hazard.") (citations omitted); *Febuary*, 242 Ga. App. at 140.

Nor is our conclusion changed by *Johnston v. Ross*, 264 Ga. App. 252 (590 SE2d 386) (2003); *Bastien v. Metro. Park Lake Assoc.*, 209 Ga. App. 881 (434 SE2d 736) (1993); and *Watts v. Jaffs*, 216 Ga. App. 565 (455 SE2d 328) (1995), which are relied upon by Cummings. Those cases involved the violation of housing codes by landlords of *residential housing*, not commercial property, and thus are distinguishable from the present case.[5]

Cummings further contends that OCGA § 25-2-12 (c) applies in this case and evidences an important public policy adopted by the General Assembly in favor of strict compliance with fire safety codes in State-occupied buildings that should override the equal knowledge exception.[6] However, OCGA § 25-2-12 (c) does not create a special set of more stringent minimum fire safety standards applicable only to facilities "owned and operated or occupied by the state." Rather, it

ramp with defective handrail precluded recovery by plaintiff who slipped on ramp, since she had equal knowledge of defect).

[5] Indeed, in *Johnston*, this Court specifically emphasized the "important public policy in favor of preventing unsafe residential housing" as the basis for its decision. (Punctuation and footnote omitted.) Id. at 254. The majority also distinguished the decisions cited by the dissent in which summary judgment to the defendant was held to be appropriate based on the equal knowledge exception, noting that those cases "do not involve the relationship between a *residential* tenant and [a] landlord." (Footnote omitted; emphasis in original.) Id. at 255. See also *Watts*, 216 Ga. App. at 566.

[6] OCGA § 25-2-12, provides in part:

(a) (1) The county governing authority in any county having a population of 100,000 or more, and the municipal governing authority in any municipality having a population of 45,000 or more, each as determined by the most recent decennial

simply provides that with respect to such facilities, the Office of the Safety Fire Commissioner, rather than a municipal agency, will have responsibility for enforcing the generally applicable State minimum fire safety standards. Hence, there is no special public policy ground applicable in this case that would justify overriding the long-established equal knowledge exception applicable in static defect cases.

For the foregoing reasons, the arguments raised by Cummings are unavailing. We conclude that Cummings had equal knowledge of the hazardous condition of the rear entranceway, precluding her recovery regardless of whether the structure of the entrance violated applicable building codes. Accordingly, we reverse the trial court and hold that summary judgment should have been granted in favor of Trans-Vaughn.

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 2, 2005 — 

*Moore, Clarke, DuVall & Rodgers, Charles J. Willcox, Gerald R. Ryan, Jr.*, for appellant.

*Boston Passante, Russell M. Boston, Wendy S. Boston, Speed & Seta, Jeremy R. Davis*, for appellee.

---

census published by the United States Bureau of the Census, and those municipalities pursuant to subsection (b) of this Code section shall adopt the state minimum fire safety standards adopted in the rules and regulations promulgated pursuant to this chapter, including all subsequent revisions thereof.

(2) With respect to those buildings and structures listed in Code Section 25-2-13, except for hospitals, nursing homes, jails, ambulatory health care centers, and penal institutions and except for buildings and structures which are owned and operated or occupied by the state, every such local governing authority shall be responsible for enforcing such fire safety standards within its jurisdiction.

. . .

(c) With respect to those buildings and structures listed in Code Section 25-2-13, in jurisdictions other than those jurisdictions covered under subsection (a) of this Code section, and with respect to every such hospital and *every such building and structure owned and operated or occupied by the state, wherever located, the office of the Commissioner shall perform those duties specified in paragraph (2) of subsection (a) of this Code section and shall perform all other duties required by this chapter.*

(Emphasis supplied.) OCGA § 25-2-12 (a) (1), (2), (c).