A98A0258. DAVIS v. GBR PROPERTIES, INC. et al.
(504 SE2d 204)

BLACKBURN, Judge.

On December 15, 1992, Virginia W. Davis went to the offices of Bio-Behavioral Associates, P.C. for psychiatric treatment of depression. Upon leaving the building, Davis fell while walking down the handicapped-accessible ramp, sustaining injuries including a broken hip and rib. Davis sued Bio-Behavioral and GBR Properties, Inc., the owner of the building, claiming that the ramp was unsafe. Davis subsequently died, and was replaced as plaintiff by her husband, Harry C. Davis, Jr., as executor of her estate. The trial court granted defendants' motion for summary judgment, and plaintiff appeals.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. "One who owns or occupies land and by express or implied invitation, induces or leads others to come upon his premise for any lawful purpose, is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. OCGA § 51-3-1. While not an insurer of the invitee's safety, the owner/occupier is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge. The owner/occupier owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap." (Citation and punctuation omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (493 SE2d 403) (1997).

In applying these principles to a slip-and-fall case, the Supreme Court stated as follows: "[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/

occupier. However, the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." Id. at 748-749. Moreover, the Court "remind[ed] members of the judiciary that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication." Id. at 748. Although this is not a typical grocery store slip-and-fall case, the principles enunciated in *Robinson* are generally applicable to such issues.

Viewed in the light most favorable to plaintiff, the evidence shows that, the day before the incident, Davis called Bio-Behavioral and told them she was experiencing difficulty breathing and walking as a result of pneumonia, and was told to use the handicapped-accessible ramp. When she arrived for her appointment the next day, Davis was helped by her husband to walk up the ramp.

Upon leaving the building, Davis started to walk down the ramp, holding onto the handrail and her husband's arm. Her husband then went to start the car while Davis continued down the remainder of the ramp. After she passed the point where the handrails ended, she lost her balance and fell across the curb ramp. She tried to regain her balance and grab the handrail, but the handrail did not continue to the end of the long ramp leading to the curb ramp.

Nathanial Browne, an architect testifying as an expert witness for plaintiff, testified that the ramp was unsafe and violated the standards promulgated by the American National Standards Institute. In particular, the handrails did not extend the proper distance and the side slopes were too steep, rendering the ramp dangerous. Evidence that the ramp failed to comply with such standards constitutes some evidence from which the jury could find that the ramp constituted a hazardous condition. See *Dupree v. Keller Indus.*, 199 Ga. App. 138, 142 (1) (404 SE2d 291) (1991) ("ANSI standards, as privately established guidelines, are admissible as illustrative of negligence"). See also *Anderson v. Turton Dev.*, 225 Ga. App. 270 (483 SE2d 597) (1997); *Poythress v. Savannah Airport Comm.*, 229 Ga. App. 303, 305 (2) (494 SE2d 76) (1997).

There was also evidence that the condition of the ramp contributed to the accident and to Davis' injuries. There is evidence that Davis attempted to regain her balance by reaching for the handrail, but was unable to do so because the handrail did not extend to the end of the ramp as required by ANSI standards.

There can be no question that defendants are charged with knowledge of their own ramp, as the ramp was constructed in 1992,

when the premises were converted into doctors' offices for Bio-Behavioral. Accordingly, the first element of the *Robinson* test is satisfied for summary judgment purposes.

The second prong of the *Robinson* analysis is "that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson,* supra at 749. However, for summary judgment purposes, "the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." Id. Therefore, before considering whether plaintiff has satisfied this second prong, we must consider whether defendants have established that Davis intentionally and unreasonably exposed herself to a known hazard. And, of course, we must follow our Supreme Court's admonition that "the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication." Id. at 748.

In support of their contention that Davis was negligent, defendants point to evidence showing that she had used the ramp previously and was aware of the condition of the ramp and the handrail. However, even if Davis was fully aware of the ramp and handrail, this does not establish that she knew or should have known of the hazard posed thereby, or that she intentionally and unreasonably exposed herself to the hazard by walking down the ramp. We must start from the premise that "[a]n invitee who responds to the owner/occupier's invitation and enters the premises does so pursuant to an implied representation or assurance that the premises have been made ready and safe for the invitee's reception, and the entering invitee is entitled to expect that the owner/occupier has exercised and will continue to exercise reasonable care to make the premises safe." *Robinson,* supra at 741. This premise is particularly applicable in this case, as Bio-Behavioral specifically instructed Davis to use the ramp to enter the building. The danger posed by a ramp is not as obvious at first glance as, say, that posed by a hole in the ground or a pool of oil on the floor. Accordingly, we cannot say that Davis appreciated the dangers posed by the ramp or that her use of the ramp, in response to Bio-Behavioral's directions, was unreasonable. See, e.g., *Pippins v. Breman,* 152 Ga. App. 226, 228 (262 SE2d 477) (1979) (" 'there is a difference between mere knowledge of a defect and full appreciation of the risk involved' ").

A jury may well conclude that the ramp was not a hazardous condition, or that, if it was, it did not cause Davis' injuries. Alterna-

tively, the jury could find that the ramp was hazardous and did contribute to Davis' injuries, but that plaintiff is nonetheless precluded from recovery because of Davis' knowledge of the hazard. We do not express any opinion as to these matters, other than to state that the facts presented are sufficient to allow the case to proceed to trial and do not lend themselves to summary adjudication. The ultimate resolution of these issues is, and ought to be, the responsibility of the jury. *Robinson*, supra at 748.

2. In addition to her premises liability claim, Davis claimed that Bio-Behavioral breached a duty of trust and confidence by not rendering adequate assistance after her fall. The essence of this claim is that, because Davis' psychiatrist, Dr. Aleem, was an actual or apparent agent of Bio-Behavioral, a confidential relationship existed between Davis and Bio-Behavioral, requiring Bio-Behavioral to render affirmative assistance following her fall. See *Spikes v. Heath*, 175 Ga. App. 187, 190 (332 SE2d 889) (1985) (relationship of trust and confidence exists between doctor and patient).

However, even if Bio-Behavioral had such a duty, plaintiff fails to point to any evidence showing a breach thereof or showing that Davis suffered any additional injury as a result of Bio-Behavioral's alleged failure to render adequate assistance. Accordingly, the trial court did not err in granting summary judgment on this claim.

*Judgment affirmed in part and reversed in part. Senior Appellate Judge Harold R. Banke concurs. Eldridge, J., concurs specially.*

ELDRIDGE, Judge, concurring specially.

While I concur entirely with the majority, I believe that several important legal factors should also be addressed.

1. The legal significance under OCGA § 51-3-1 of the Georgia Access To & Use of Public Facilities By Persons With Disabilities Act, OCGA § 30-3-1 et seq., which mandates compliance with the American National Standards Institute standards[1] or possibly the Rehabilitation Act of 1973[2] is that the owner/occupier has actual or constructive knowledge of any static condition, the absence of any safety

---

[1] OCGA § 30-3-9 requires compliance with "ANSI" standards A117.1-1986 or A117.1-1980.

[2] 29 USCS § 701 et seq.; 42 USCS § 12201 (a); 59 FR 17446. The Americans With Disabilities Act ("ADA"), 42 USCS § 12101 et seq. cannot be applied in this case, because of res judicata. The Federal District Court in this case, originally in the federal court, adjudicated that since the plaintiff was deceased and since only injunctive relief was sought, then there no longer existed a federal action under the ADA. Federal jurisdiction was lost with the loss of the federal issue, which under federal practice was an adjudication on the merits. Therefore, the ADA and any derivative actions were res judicata in this suit. However, if the Rehabilitation Act of 1973 is applicable to a person with a disability who comes within the ambit of that Act, then the Accessibility Guidelines for Buildings & Facilities, 36 CFR § 1191.1 were applicable.

device mandated, or prohibited condition under such Acts. Thus, as to any owner/occupier of premises that are subject to the mandate of one or more of such Acts, the first prong has been satisfied of premises liability "that the defendant had actual or constructive knowledge of the [condition]" and that such knowledge is "superior" to the invitee's knowledge, because such Acts put the owner/occupier on notice of the dangers and possible risk of injury to those individuals within the ambit of the Acts as to the requirements for the premises. See *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997); *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). The mandated knowledge gives the owner/occupier superior knowledge over the invitee as to conditions or defects set forth under the Act that should be prevented.

2. The foregoing is not negligence per se, even though it does satisfy some of the elements for premises liability under *Alterman*. Before such Acts can give rise to negligence per se, the plaintiff must show that the deceased was disabled within the meaning of the Act or Acts, that the intent of the Act was to protect such disabled as the deceased from safety risks of slip-and-fall, and that the injury was caused in whole or in part by deviation from such safety measures under the Act. *Keith v. Beard*, 219 Ga. App. 190 (464 SE2d 633) (1995); *Bradley v. Custom Sprinkler Systems*, 218 Ga. App. 431 (461 SE2d 592) (1995); *Central Anesthesia Assocs. P. C. v. Worthy*, 173 Ga. App. 150 (325 SE2d 819) (1985); *Potts v. Fidelity Fruit &c. Co.*, 165 Ga. App. 546 (301 SE2d 903) (1983). Thus, if the plaintiff by proof can bring the deceased within the statutory definition of "disabled" and show that the Act was intended to safeguard the disabled from the risk of injury that the deceased received, then the plaintiff may be able to prove negligence per se. *Thompson v. Crownover*, 259 Ga. 126, 129 (4) (381 SE2d 283) (1989); *Biggs v. Long*, 212 Ga. App. 195, 199 (3) (441 SE2d 677) (1994).

DECIDED JUNE 11, 1998 —
RECONSIDERATIONS DENIED JULY 24, 1998 —

*Goodman, McGuffey, Aust & Lindsey, William S. Goodman, Kimberly C. Raley, Tracy M. Culver, Goodman & Associates, James E. Goodman, Norman L. Smith,* for appellants.

*Hall, Booth, Smith & Slover, Alexander H. Booth, Robert L. Shannon, Jr.,* for appellees.