## A02A2215. RATHER v. WORRELL et al.
(581 SE2d 568)

RUFFIN, Presiding Judge.

Ruby Rather was a resident of Chambrel at Roswell ("Chambrel"), "a residential community designed for senior adult living." After living at Chambrel for approximately two years, Rather fell in the community meeting room when she stepped onto a stage to play a piano. Rather was injured by the fall, and she sued Chambrel's owner and manager (also collectively referred to as "Chambrel"). The trial court granted Chambrel's motion for summary judgment, and Rather appealed. Finding summary judgment appropriate, we affirm.

On appeal from the trial court's grant of summary judgment, we review the record de novo and construe the evidence and all favorable inferences in favor of Rather, the nonmoving party.[1] So viewed, the evidence shows that Rather moved into Chambrel on November 1, 1998. Rather's lease application reveals that, at the time, she was 77 years old and suffered from degenerative joint disease, hypertension, and bipolar disorder. Rather's condition required her to use a cane and take numerous medications, but she indicated on her application

---

[1] See *Davis v. GBR Properties*, 233 Ga. App. 550 (504 SE2d 204) (1998).

that she was "alert" and had no mental health limitations. Thus, Rather elected to live in Chambrel's "independent living area." As a resident of the independent living area, Rather was essentially responsible for her own care, but she had access to such services as an emergency call system and scheduled transportation.

Rather renewed her lease on December 1, 2000, and Rather's fall occurred on December 15, 2000. At approximately 6:30 p.m., Rather had gathered with friends in the community meeting room to play canasta. There was a piano in the meeting room, and Rather decided to play it for her friends while they waited on other canasta players to arrive. The piano sat on a stage with a single step in front of it. The step had no handrail, and the only time Rather saw people get on the stage they were assisted by the pastor during church services.

Rather had never been on the stage before, but it was obvious to her that the step had no handrail. When she decided to play the piano on this occasion, she did not ask anyone for help because she "didn't think [she] needed help." Rather testified in her deposition that she "like[s] being independent" and that she is "just used to doing what [she] take[s] a notion to and that's it." Accordingly, Rather used the step to access the stage without any assistance from her friends. In describing her fall, Rather stated: "I remember getting both feet up on the stage. Then I lost my balance and tumbled off." Rather does not know what caused her to lose her balance and fall — she was not dizzy, her medications had never made her feel faint, the step did not move, and she had negotiated the step and was standing on the stage "momentarily" before she fell. Rather also does not remember trying to catch herself as she fell, but she believes that she would not have fallen if there had been a handrail. According to Rather, when she flies on airplanes, she "always use[s] the handrails when they're there." Rather's fall marked the first time anyone had ever fallen on the stage or the step.

In her complaint against Chambrel, Rather alleged that the defendant "breached the duty owed to [her] by placing an unstable step in front of a stage . . . without providing a handrail or other means of support." In its motion, Chambrel argued that it was entitled to summary judgment because the undisputed evidence showed that the alleged defect "did not contribute in any way to the accident." Chambrel further argued that any defect associated with the missing handrail was obvious and known to Rather and that she chose to negotiate the step with full knowledge of the possible risks.

For Rather to recover on her negligence claim, she "must prove (1) that [Chambrel] had actual or constructive knowledge of the hazard; and (2) that [she] lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the con-

trol of [Chambrel]."[2] In opposing Chambrel's motion, however, Rather was not required to point to evidence concerning the second prong until Chambrel produced evidence showing that she acted negligently.[3]

There is no evidence in this case that Chambrel had any knowledge that the step was a hazard. Contrary to the allegation in Rather's complaint, there is no evidence that the step was unstable. Indeed, Rather acknowledged in her deposition that, as far as she knew, it did not "tip or turn or twist," or "wobble or . . . anything like that." Likewise, Rather has not pointed to any evidence that the lack of a handrail constituted a hazard. No expert testified that one was required,[4] and we are essentially asked to recognize that a single step required a handrail as a matter of law. This, we cannot do.

Furthermore, even if we assume that Chambrel's failure to provide a handrail created a hazard, there is no evidence that this condition caused Rather to fall. Her own testimony shows that she had successfully negotiated the step and was momentarily standing on the stage before she lost her balance and fell, and she does not recall reaching for anything to break her fall. Thus, we cannot discern how the lack of a handrail could have caused Rather to fall.[5]

Moreover, the evidence shows that Rather's fall was a result of her own negligence in encountering the step. Rather knew there was no handrail and that other residents were usually assisted when they accessed the stage. Although it appears that Rather had used handrails in other facilities when they were available in the past and that she would have used one in this instance had one been available, her sense of independence caused her to forge ahead without one and without asking for help. She obviously appreciated the risks associated with negotiating the step without any aid, and under these circumstances, we fail to see how Chambrel could be liable for her injuries without making it an insurer of the premises.[6] Accordingly, the trial court properly granted summary judgment to Chambrel.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

---

[2] (Punctuation omitted.) *Murray v. West Bldg. Materials of Ga.*, 243 Ga. App. 834, 835 (534 SE2d 204) (2000) (physical precedent only).

[3] See id.; *Davis*, supra at 551 (1).

[4] Compare *Murray*, supra at 834 (structural engineer testified that steps and handrail violated building code); *Davis*, supra (architect testified that handicapped-accessible ramp failed to comply with applicable standards).

[5] Compare *Murray*, supra (defect in step and handrail caused plaintiff to turn her foot); *Davis*, supra (plaintiff attempted to regain her balance by grabbing for handrail that did not continue to the end of the ramp, although standards required it to do so).

[6] See *Moss v. Dept. of Public Safety*, 247 Ga. App. 426, 427 (1) (543 SE2d 799) (2000); *Gray v. Oliver*, 242 Ga. App. 533, 534-535 (1) (530 SE2d 241) (2000).

DECIDED MARCH 11, 2003.

*Bell Law Firm, Lloyd N. Bell, Linley Jones*, for appellant.
*Mabry & McClelland, Walter B. McClelland, Stokes, Lazarus & Carmichael, Brian M. Dossena*, for appellees.