A05A2097. NORMAN v. JONES LANG LaSALLE AMERICAS, INC.
A05A2218. LEND LEASE REAL ESTATE INVESTMENTS, INC. v. NORMAN.
(627 SE2d 382)

ELLINGTON, Judge.

After falling at her workplace, Carole Norman filed this premises liability suit against the building's owner, Lend Lease Real Estate Investments, Inc., and the property manager, Jones Lang LaSalle

Americas, Inc.[1] Both defendants filed motions for summary judgment. Following a hearing, the trial court granted Jones Lang's motion for summary judgment, and, in Case No. A05A2097, Norman appeals. The trial court, however, denied Lend Lease's motion for summary judgment, and, in Case No. A05A2218, Lend Lease appeals. For the following reasons, we affirm the grant of summary judgment to Jones Lang, but reverse the court's denial of summary judgment to Lend Lease.

"Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. In evaluating whether summary judgment is proper, the evidence and all reasonable inferences drawn therefrom must be construed in the light most favorable to the nonmovant." (Citation omitted.) *Trans-Vaughn Dev. Corp. v. Cummings*, 273 Ga. App. 505 (615 SE2d 579) (2005). "Our review of the trial court's summary judgment ruling is de novo." (Citation omitted.) Id. at 507.

So viewed, the record shows that Norman started working for her employer, Executrain, in December 1999. Executrain leased the entire fourth floor of a building owned by Lend Lease and managed by Jones Lang.[2] According to Norman, from December 1999 through the day of her fall two months later, the ceiling lights in her office did not work. Instead, Norman claims she used a desk lamp to light her office. On Monday, February 7, 2000, Norman arrived at work at approximately 6:45 a.m., when it was still dark outside. As Norman walked into her office, which she described as "totally dark," she tripped and fell over one or more boxes on the floor in her office.[3] According to Norman, the boxes were not there when she left work at the end of the business day on Friday afternoon, February 4, 2000. No one witnessed Norman's fall. The record also shows that, approximately two hours after she fell, Norman e-mailed her employer, stating as follows: "This morning at 6:30ish, I tripped over a box in our office that is holding some lights to be installed on our work stations. I fell on my right side and right knee. I have removed this box from the walk path so no one will trip over it. So far I am just very sore."

Norman sued Lend Lease, Jones Lang, and the other defendants, alleging that one or more of the defendants came into her office over

---

[1] Norman also named several other defendants, including the company which insured the building, two unknown corporate defendants, and two "John Does." These defendants are not parties to this appeal.

[2] It is undisputed that Jones Lang, as the property manager, was responsible for, among other things, ensuring compliance with laws, ordinances, and regulations, and inspecting, maintaining, and repairing the premises on behalf of Lend Lease.

[3] There was no evidence as to how many boxes were present or the size of the boxes. Further, there is nothing in the record to show that either Lend Lease or Jones Lang had the opportunity to examine the boxes that allegedly caused Norman's fall.

the weekend (between Friday evening and Monday morning) to install or repair the ceiling lights and that they negligently left the boxes in the middle of the floor of her office. Norman also subsequently argued that, even if the defendants did not leave the boxes in her office, they were negligent in failing to repair the ceiling lights, which caused her office to be dark and, therefore, contributed to her fall.

Both Lend Lease and Jones Lang denied that they or their agents had been doing any repairs in Norman's office in the days prior to Norman's fall, that they had placed the boxes in Norman's office, or that they were aware that the boxes were on the floor before she fell. Further, Jones Lang specifically denied that it was aware of any problems with the ceiling lights prior to Norman's fall[4] and denied that anyone representing Norman or Executrain had ever requested that it repair the ceiling light fixtures or replace the fixtures' light bulbs either before *or after* Norman's fall. Moreover, to the extent that the boxes may have contained lights to be installed in the employee work stations, as Norman's e-mail suggests, a Jones Lang manager testified that his company was not responsible for providing or maintaining the light fixtures on Executrain's work stations, nor had Executrain ever requested that it do so. This was confirmed by an officer of Executrain, who testified that, as far as he knew, his company purchased and maintained lights for its employee work stations and the building manager "had nothing to do" with maintaining the work station lights.

Both Lend Lease and Jones Lang filed motions for summary judgment. The trial court granted Jones Lang's motion after finding that Norman could not prove Jones Lang's superior knowledge of the hazards that caused her fall, and Norman appeals this decision in Case No. A05A2097. The court denied Lend Lease's motion, however, and the company appeals in Case No. A05A2218.

Before addressing the parties' specific contentions on appeal, we note that, in order for Norman to recover from either Jones Lang or Lend Lease in this premises liability case, she must show that their knowledge of the hazard that caused her injuries was superior to her own. *Baldwin County Hosp. Auth. v. Martinez*, 204 Ga. App. 840, 842 (420 SE2d 760) (1992). In other words, she must present some evidence demonstrating that (1) the defendants had actual or constructive knowledge of the hazard and (2) she lacked knowledge of the hazard despite her exercise of ordinary care and that her lack of

---

[4] Notably, Jones Lang's building engineer stated by affidavit that the ceiling lights in Norman's office were operational before and after Norman's fall, although this simply creates a factual issue for jury resolution.

knowledge was due to conditions within the defendants' control. *Trans-Vaughn Dev. Corp. v. Cummings*, 273 Ga. App. at 507-508. This is because a landowner (or one managing the property on his behalf) is not an insurer of the safety of invitees. *Cooper v. Corporate Property Investors*, 220 Ga. App. 889, 892 (470 SE2d 689) (1996).

> Falling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go. [Therefore,] if [an] invitee knows of the condition or hazard [that caused the injury,] there is no duty on the part of the proprietor to warn the invitee and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of this knowledge, assumes the risks and dangers incident to the known condition.

(Citations and punctuation omitted.) *Baldwin County Hosp. Auth. v. Martinez*, 204 Ga. App. at 842. Because a plaintiff cannot recover in a premises liability suit unless the defendant had superior knowledge of the hazard, the defendant is entitled to summary judgment if there is no evidence that it had superior knowledge or the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant. Id.

## Case No. A05A2097

1. Norman challenges the trial court's grant of summary judgment to Jones Lang, the building manager. Specifically, Norman contends the trial court "either overlooked or failed to appreciate the fact that [she] was unaware of the boxes of large overhead fluorescent lights left on the floor of the entry to her office, the *specific* hazard that precipitated her fall." (Emphasis in original.) Norman has misconstrued the trial court's order, however. In granting summary judgment to Jones Lang, the trial court did not find that Norman knew the boxes were on the floor before she fell, but instead found as a matter of law that Norman's knowledge of the hazard was *equal to or greater than* Jones Lang's.

The record supports the court's conclusion, because there is no evidence that *either* Jones Lang or Norman knew the boxes were on the floor before Norman fell. In her complaint, Norman acknowledged that she does not know who placed the boxes on the floor. Further, Jones Lang specifically denied that it placed the boxes on the floor or that its employees or agents had been working in Norman's office in the days before Norman fell.

Even so, Norman argues on appeal that the boxes contained fluorescent lights to be installed in the ceiling fixtures and, since Jones Lang was responsible for repairing the ceiling lights, "[c]ommon sense dictates" that Jones Lang had left the boxes in her office "because it had finally undertaken to replace or repair the overhead lights." She cites to no competent evidence to support this contention, however. The only evidence Norman presented to show that the boxes contained lights to be installed in the ceiling was her statement in an affidavit that it was her "understanding" that the boxes contained such lights. This statement is clearly not based upon her personal knowledge. See *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. 590, 595 (3) (580 SE2d 243) (2003) (an affidavit must be based upon personal knowledge, and an affiant's statement that he is "aware" of a fact or that his statement is based upon his "belief" or "understanding" indicates that the affiant has no personal knowledge of the fact; such statement may be nothing more than the affiant's opinion given without any demonstrated basis of knowledge). Therefore, the statement has no probative value. Further, the affidavit statement, made more than three years after her fall, directly conflicts with the e-mail she sent to her employer two hours after the fall, in which she said she fell over a box containing "lights to be installed on our work stations," as well as her complaint, which said she tripped over light fixtures in the middle of her office floor. Norman has offered no explanations for these discrepancies. Moreover, no one witnessed Norman's fall, she has not presented any other witnesses who had actual knowledge about the contents of the box, and the defendants have no actual knowledge about the contents because they did not have the opportunity to inspect the boxes after the fall. Clearly, Norman's suggestion that the boxes contained ceiling lights and, therefore, Jones Lang *must* have left them on the floor, lacks any foundation and is mere speculation.

On a motion for summary judgment, once the defendant pierces the plaintiff's complaint by either disproving the plaintiff's case or demonstrating that there is no evidence to support at least one essential element of the plaintiff's case, the plaintiff cannot rest on allegations in his or her pleadings, but must point to specific, competent evidence giving rise to a triable issue. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see also OCGA § 9-11-56 (e). Although Norman, as nonmovant, is entitled to all reasonable inferences from the evidence presented, such inferences cannot be based upon mere conjecture or possibility. *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 683 (3) (a) (498 SE2d 748) (1998). Because Jones Lang showed that there was no evidence that they knew about the boxes prior to Norman's fall, Norman's mere allegation that "common

sense dictates" that Jones Lang left the boxes in her office is insufficient to create a jury issue on whether Jones Lang had superior knowledge about the hazard. See *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. at 595 (3) (a plaintiff cannot survive a defendant's motion for summary judgment by relying upon affidavits that are not based upon the affiant's personal knowledge); *Sharfuddin v. Drug Emporium*, 230 Ga. App. at 683 (3) (a) (plaintiff's assumption that defendant must have spilled a foreign substance on the floor while cleaning the area was unsupported by any evidence; plaintiff was not entitled to an inference that defendant must have caused the spill because such inference is unreasonable when there was evidence that the spill could have come from other sources).

Accordingly, since there is no evidence that either Norman or Jones Lang knew about the boxes, their knowledge of the hazard (or, more accurately, their lack of knowledge) was equal. The court did not err in finding as a matter of law that Norman could not demonstrate Jones Lang's superior knowledge of the hazard. *Cooper v. Corporate Property Investors*, 220 Ga. App. at 892; see *Baldwin County Hosp. Auth. v. Martinez*, 204 Ga. App. at 842-843 (when neither plaintiff nor defendant was aware of bumps in the asphalt parking lot that caused plaintiff to trip and fall, plaintiff could not establish defendant's superior knowledge); cf. *Sacker v. Perry Realty Svcs.*, 217 Ga. App. 300, 301-302 (457 SE2d 208) (1995) (plaintiff tripped over a displaced railroad tie while walking in a dark parking lot; even though plaintiff knew that it was too dark to see properly, the trial court properly denied the property owner's summary judgment motion because the owner had actual knowledge that the railroad ties were present and sometimes became displaced, and this knowledge was superior to the plaintiff's).

2. Norman also contends that the trial court erred in finding that her knowledge of the inoperable ceiling lights was equal to or greater than that of Jones Lang. For the following reasons, we disagree.

(a) Norman argues that inoperable ceiling lights were partially to blame for her fall, that the inoperable lights constituted a building code violation, and that such violation showed that Jones Lang had superior knowledge of the hazard. Norman relies on *Hicks v. Walker*, 262 Ga. App. 216 (585 SE2d 83) (2003), for these contentions. In *Hicks*, an invitee was injured when a deck on the back of a house collapsed due to several major construction defects. Id. at 217-218. Because the defective construction of the deck violated the applicable building codes, this Court held that the homeowner was presumed to have constructive knowledge of the defects. Id. at 219. Since there was no evidence that the invitee, a small child, knew about the hazard, a jury issue existed as to whether the owner had superior

knowledge about the hazard. Id. Accordingly, the homeowner was not entitled to summary judgment. Id.

The instant case is clearly distinguishable from *Hicks*. Here, the inoperable ceiling lights were not a hidden construction defect. It is undisputed that Norman had actual knowledge of this open and obvious condition for at least two months before her fall. Therefore, even if the inoperable lights resulted from a construction defect of which Jones Lang was presumed to have constructive knowledge, Norman's knowledge of the hazard was at least equal to that of Jones Lang. Because the undisputed evidence showed that Jones Lang did not have superior knowledge of this hazard, Jones Lang was entitled to summary judgment. *Trans-Vaughn Dev. Corp. v. Cummings*, 273 Ga. App. at 509; *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392, 395 (506 SE2d 910) (1998); *Lake v. Atlanta Landmarks*, 257 Ga. App. 195, 197 (570 SE2d 638) (2002) (plaintiff was aware of the inadequate amount of light over the stairway; therefore, she could not recover in her premises liability suit, which claimed that the inadequate lighting caused her to fall down the stairs); but cf. *Val D'Aosta Co. v. Cross*, 241 Ga. App. 583, 584 (528 SE2d 580) (1999) (defendant motel's wheelchair ramp had a construction defect that violated state and federal laws; because the owner could suffer criminal sanctions for noncompliance with the laws, this Court held that the owner was deemed to have superior knowledge of the defect as a matter of law over the disabled plaintiff, even though the plaintiff had previously used the ramp).

(b) Norman also argues that the inoperable lights were building code violations and that all building code violations constitute negligence per se, and therefore, Jones Lang was not entitled to summary judgment. Norman again relies on *Hicks*, supra, in which this Court noted in dicta that "the violation of a building code is negligence per se." (Footnote omitted.) 262 Ga. App. at 218. Although the code violations in *Hicks* may, in fact, have constituted negligence per se, to the extent the statement suggests that proof of *any* building code violation would automatically establish negligence per se under any circumstances, it is overly broad and misleading.[5]

> [G]enerally, negligence per se arises when a statute or ordinance is violated. The violation of certain mandatory regulations may also amount to negligence per se if the

---

[5] This is equally true for similar statements in other cases. See, e.g., *Hannah v. Hampton Auto Parts*, 234 Ga. App. at 395 ("We need not decide whether the steps constituted a building code violation, because, even assuming they did, it would show only negligence per se.") (punctuation omitted), quoting *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. 724, 726 (2) (490 SE2d 133) (1997).

628

regulations impose a legal duty. OCGA § 51-1-6 provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." Assuming that a violation of a statute or mandatory regulation has occurred, before negligence per se can be determined, a trial court must consider (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm the statute was intended to guard against. Finally, if the court finds negligence per se, the plaintiffs must then demonstrate a causal connection between the negligence per se and the injury. And it is generally a jury question as to whether or not such negligence proximately caused the injury.

(Citations and punctuation omitted.) *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 349-350 (3) (568 SE2d 559) (2002). See also *Groover v. Johnston*, 277 Ga. App. 12, 13 (1) (625 SE2d 406) (2005) ("[v]iolation of a statute does not necessarily constitute negligence per se") (citation omitted). Therefore, in order to establish negligence per se based upon violation of a building code, Norman had to present some evidence that the defendants violated a specific code provision, that the provision was mandatory and had the force of law, that she was in the class the provision was intended to protect, that she suffered the type of harm that the provisions were intended to guard against, and that the alleged negligence per se proximately caused her injuries. *Hubbard v. Dept. of Transp.*, 256 Ga. App. at 350 (3).

In this case, Norman's complaint raised a simple negligence claim against the defendants; she did not contend that the defendants violated any building or safety codes or that their actions constituted negligence per se. The record shows Norman first raised the allegations of code violations in a supplemental brief to Jones Lang's motion for summary judgment, which was filed two years after her complaint. Norman attached an affidavit of an expert witness, who stated that, based upon his knowledge of the building codes, it was his opinion that the inoperable lights violated the "Standard Building Code and the [National Fire Protection Association] 101 Life Safety Code, which were the governing and mandatory building codes in effect as the Georgia State Minimum Standard Codes" at the time of Norman's fall.[6] The expert, however, did not identify or quote any

---

[6] The expert also stated that, in his opinion, the means of egress in Norman's office was

specific code provisions in his affidavit, nor are there copies of any code provisions in the record. Moreover, although it appears the trial court could have taken judicial notice of the code provisions,[7] Norman never requested that it do so.

Therefore, because Norman failed to specify which building or safety code provisions the defendants allegedly violated in this case or to request that the trial court take judicial notice of such provisions, there was no basis for the trial court to make a determination as to whether the alleged code violations gave rise to negligence per se. See *Spooner v. City of Camilla*, 256 Ga. App. 179, 184 (2) (b) (568 SE2d 109) (2002) (plaintiffs' negligence per se argument failed because they did not cite to any specific statute, rule, or regulation that imposed the duty they claim was breached by defendants; further, their expert's testimony that he knew such rule existed because he had read "various rules and regulations" was hearsay which lacked probative value); *Quinn v. City of Cave Spring*, 243 Ga. App. 598, 600-601 (3) (532 SE2d 131) (2000) (plaintiff failed to specify which code section, rule or regulations he contended the city violated; absent this evidence, the city was entitled to summary judgment on plaintiff's negligence per se claim); see also *Donaldson v. Dept. of Transp.*, 236 Ga. App. 411, 415-416 (1) (b) (511 SE2d 210) (1999) (trial court had no basis to determine if defendant's violation of a uniform code constituted negligence per se because plaintiff failed to tender the code into evidence). Therefore, this unsupported allegation of negligence per se does not present a jury question that would preclude the grant of summary judgment to Jones Lang.

(c) Further, even if the inoperable lights in this case violated specific building or safety codes *and* such violations constituted negligence per se, Norman would not automatically survive Jones Lang's motion for summary judgment. Negligence per se does not equal liability per se, and Norman's equal knowledge of the hazard would still entitle Jones Lang to summary judgment. *Yasinsac v. Colonial Oil Properties*, 246 Ga. App. 484, 486 (3) (541 SE2d 109) (2000) (emphasizing that the defendant's negligence is only one of the essential elements of a premises liability case); *Hannah v. Hampton Auto Parts*, 234 Ga. App. at 395; *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. at 726 (2); *Florence v. Knight*, 217 Ga. App. 799, 800 (459 SE2d 436) (1995); *Sullivan v. Quisc, Inc.*, 207 Ga. App. 114, 116 (427 SE2d 86) (1993).

---

obstructed and that such obstruction violated the building and safety codes. See Division 3 (a), infra.

    [7] See *State v. Ponce*, 279 Ga. 651, n. 1 (619 SE2d 682) (2005) (courts are allowed to take judicial notice of regulations promulgated by state agencies pursuant to the Administrative Procedure Act, OCGA § 50-13-1 et seq.).

(d) Norman also argues that Jones Lang, as the building manager, had an affirmative duty to repair the ceiling lights and, therefore, had constructive knowledge of the "dark and unlit conditions" of her office that contributed to her fall. Even assuming that such duty exists, however, Norman's actual knowledge of such conditions prevents her from recovering for her injuries. See Divisions 2 (a) and (c), supra.

3. (a) Norman contends that the boxes blocked the doorway to her office and obstructed her "means of egress,"[8] that such obstruction violated unspecified building and safety codes, and that such violation constituted negligence per se. This contention must fail for the same reasons given in Division 2 (b), supra.

(b) Further, even if this temporary obstruction violated the codes, and even if such violation constituted negligence per se, Norman would still have to demonstrate that Jones Lang had superior knowledge of the hazard. See Division 2 (c), supra. Jones Lang has demonstrated that there is no evidence that it knew about the boxes before Norman's fall. See Division 1, supra. Further, the boxes were not a construction defect of which the property owners might be presumed to have constructive knowledge. Cf. *Hicks v. Walker*, 262 Ga. App. at 218 (homeowner was presumed to have notice of hazards resulting from defective construction); *Val D'Aosta Co. v. Cross*, 241 Ga. App. at 584 (motel owner was presumed to have constructive knowledge of a construction defect that violated state and federal laws, because failure to comply with the laws subjected the owner to criminal sanctions). Therefore, absent any evidence of Jones Lang's superior knowledge of the boxes, Jones Lang was entitled to summary judgment. See Division 2 (c), supra.

4. (a) Norman argues that she should be able to recover for her injuries because she had no alternative but to walk into her completely dark office so that she could work. Norman compares her situation to those in which apartment tenants were forced to navigate past known hazards in order to avoid being "captives" in their homes.[9]

---

[8] Notably, although Norman's expert witness' affidavit includes his conclusory statement that the area where Norman fell "was part of the means of egress," there is no competent evidence in the record that the boxes obstructed Norman's office doorway. In fact, in her complaint, she specifically alleged that "she fell over light fixtures in the middle of her office." Norman's only evidence that the boxes were obstructing the doorway to her office was in an affidavit that she filed after the trial court had issued the summary judgment order in this case. This Court, however, only reviews evidence that was presented to the trial court before it issued the ruling on appeal. *RC Cola Bottling Co. v. Vann*, 220 Ga. App. 479, 480 (1) (469 SE2d 523) (1996).

[9] See, e.g., *Carey v. Bradford*, 218 Ga. App. 325, 326 (2) (461 SE2d 290) (1995) (tenant of apartment building had no alternative but to use the only stairs leading from his second floor apartment, even though he knew that the lights over the stairs were inoperative and had repeatedly notified the landlord of the problem; to prevent him from recovering under such

In those cases, this Court applied a necessity exception to the acceptance of the risk doctrine and allowed the tenants to pursue their premises liability claims even though they had knowingly risked injury. This Court has expressly limited this exception, however, to cases involving residential landlord/tenant relationships "where the tenant is required to traverse a known hazard in order to enter or leave his home." (Citation omitted.) *Martin v. Consolidated Stores Corp.*, 248 Ga. App. 812, 814 (547 SE2d 380) (2001). See also *Hart v. Brasstown View Estates*, 234 Ga. App. 389, 391 (506 SE2d 896) (1998) (the necessity rule is limited to landlord/tenant relationships and does not apply when the parties are an innkeeper and a guest); *Grier v. Jeffco Mgmt. Co.*, 176 Ga. App. 158, 159-160 (335 SE2d 408) (1985) (the necessity exception applies in landlord/tenant cases, but not when the parties have a business owner/customer relationship).[10]

In this case, the hazardous condition (the inoperable ceiling lights) was at Norman's office, not her home. Further, the undisputed evidence showed that the hazard existed for at least two months before Norman's fall and that Norman repeatedly entered and exited her office during this period. Clearly, the inoperable lights did not prevent Norman from working. Nor is there any evidence to demonstrate that Norman was at risk of being a "captive" in her office because of the inoperable lights. Accordingly, Norman has failed to demonstrate any circumstances that justify the application of the necessity rule in this case.

(b) To the extent Norman suggests that the necessity rule should allow her to recover from Jones Lang because the boxes obstructed the sole entrance to her office and she was forced to traverse this hazard in order to work, this argument lacks merit. First, as previously explained, the necessity rule does not apply to cases that do not involve residential landlord/tenant relationships. Second, there was no competent evidence that the boxes obstructed the office doorway. See footnote 8, supra. Third, even if the boxes obstructed the doorway, it is undisputed that Norman moved the boxes out of the way immediately after her fall. This evidence shows that the boxes were

---

situation would have made him a captive in his own home); *Grier v. Jeffco Mgmt. Co.*, 176 Ga. App. 158, 158-160 (335 SE2d 408) (1985) (tenant of apartment building had no alternative but to knowingly traverse a patch of ice in order to leave her apartment).

[10] We note that this Court has also refused to apply the necessity rule in cases where plaintiffs claimed they had no choice but to traverse obvious dangers because of sudden, urgent needs. *Martin v. Consolidated Stores Corp.*, 248 Ga. App. at 814 (plaintiff knowingly traversed standing water on the restroom floor on his way to use the restroom; even though the plaintiff contended he had an urgent need to use the restroom, the necessity rule did not apply); *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. at 726 (2) (although plaintiff claimed she had to use a restroom stall with a broken safety latch because it was an "emergency," the necessity exception did not apply).

not an unavoidable hazard that would have prevented her from entering or leaving her office. Therefore, the necessity rule would not be applicable.

*Case No. A05A2218*

5. Lend Lease contends the trial court erred in denying its motion for summary judgment because the record shows that Norman's knowledge of the hazards was equal to or greater than its own and, therefore, Norman cannot prevail in her suit against Lend Lease. We agree.

Under OCGA § 51-3-1, Lend Lease, as the property owner, had a general duty to exercise ordinary care to keep its premises reasonably safe for invitees. Lend Lease claimed, however, that it was an out-of-possession landlord and that OCGA § 44-7-14 limited its liability to third parties to damages which resulted from either faulty construction or from hazards created by its failure to repair the premises after receiving notice of a defect. But regardless of whether Lend Lease's duty to Norman is defined by OCGA § 51-3-1 or § 44-7-14, Norman cannot prevail against Lend Lease unless she can show that Lend Lease had superior knowledge of the hazards that caused her injury. *Trans-Vaughn Dev. Corp. v. Cummings*, 273 Ga. App. at 507-508; see also *Osman v. Olde Plantation Apts.*, 270 Ga. App. 627, 631 (1) (607 SE2d 236) (2004) (a landlord's liability under OCGA § 44-7-14 only attaches when the landlord has superior knowledge of the hazard).

On this issue, the record contains no evidence that Lend Lease had actual knowledge about either the inoperable lights or the boxes prior to Norman's fall or that Lend Lease's constructive knowledge of these hazards, if any, was greater than that possessed by Jones Lang. In Case No. A05A2097, we affirmed the trial court's conclusion that Norman's knowledge of these hazards was equal to or greater than that of Jones Lang. It follows, then, that Norman's knowledge *also* was equal to or greater than that of Lend Lease. Because Norman cannot show that Lend Lease had superior knowledge of the hazards, she cannot prevail on her claim. Therefore, the trial court erred when it denied Lend Lease's motion for summary judgment.

6. Lend Lease also argues that it was entitled to summary judgment on the issue of whether it was an out-of-possession landlord. Given our decision in Division 5, supra, this issue is moot.

*Judgment affirmed in Case No. A05A2097. Judgment reversed in Case No. A05A2218. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 15, 2006.

*Cash, Kruger & Fredericks, Andrew B. Cash, Alwyn R. Fredericks,* for Norman.

*Hicks, Casey & Foster, William T. Casey, Jr., Sommers, Scrudder & Bass, Henry E. Scrudder, Jr.,* for Jones Lang LaSalle Americas, Inc.

*Allen, Kopet & Associates, James A. Meaney III, Alisa W. Ellenburg, Goodman, McGuffey, Lindsey & Johnson, C. Wade McGuffey, Jr., W. Davis Hewitt,* for Lend Lease Real Estate Investments, Inc.