**FOURTH DIVISION
DILLARD, P. J.,
MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2022**

# In the Court of Appeals of Georgia

A21A1678. GILCHRIST v. MELDI SUB, LLC et al.

PINSON, Judge.

Anthony Gilchrist was injured when he fell on a walkway on the side of a building housing a sandwich shop and a convenience store. Based on the presence of a protruding cleanout plug and the absence of a railing around the edge of the walkway, he sued the building owner and the lessees who operated the stores for negligence, negligence per se, and nuisance. The trial court granted summary judgment in favor of the defendants. We affirm the trial court's decision because the undisputed evidence shows that these conditions were open and obvious to someone exercising reasonable care under the circumstances. As a result, Gilchrist is deemed to have had equal knowledge of the conditions that caused him to fall, which precludes recovery here.

## Background

In February 2017, Gilchrist went for a walk into town from his Hancock County home on the outskirts of Sparta.[1] He was joined on his walk by a friend, Tarsha Williams. The walk was for exercise, and Gilchrist did not plan to shop or otherwise conduct business along the way.

Gilchrist was born with an eye condition called retinitis pigmentosa and is legally blind. Gilchrist testified that he has never held a driver's license because of his visual impairment and has received Medicare and Social Security Disability Insurance payments since 2004. That said, as of the time of his accident, he was able to see silhouettes of people, cars, animals, and "things of that nature." He was also able to see the ground well enough to avoid uneven pavement, tree limbs, and other obstructions. Before his accident, he had never used a cane or a walking stick.

As the pair approached town, they stopped to talk to an acquaintance who was pumping gas at an Exxon station. After a few minutes, Williams left to continue walking, but Gilchrist remained, telling Williams he would catch up with her. After finishing his conversation, Gilchrist walked from the gas pump to the sidewalk that

---

[1] In reviewing summary judgment orders, we view the evidence in the record in the light most favorable to the party opposing summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991).

ran along the storefront of the gas station's convenience store and an adjoining Subway shop. He chose that route because he was attempting to avoid the cars driving through the parking lot. Gilchrist did not enter either the convenience store or the Subway.

Once on the sidewalk, Gilchrist walked along the storefront to the end of the building and then turned to his left, believing he had reached the sidewalk running parallel to the street. He intended to cross that street, and he was paying attention to the cars on the street, looking for a break in the traffic. But rather than being on the sidewalk, Gilchrist was on the service walkway next to the building, which was elevated a few feet above ground level and had no railing.[2] Gilchrist took several steps and then stumbled, fell off the walkway, and landed on the ground below, sustaining various injuries.

Gilchrist testified that he did not know what caused him to fall. But an eyewitness said that Gilchrist "tripped over . . . a clean-out plug protruding up in the

---

[2] A photograph of the accident scene shows the walkway, which sits atop a retaining wall extending from the parking lot toward the back of the building. The height of the wall—and thus the distance from the walkway to the ground below—increases as the ground level slopes downward. An expert who examined the property testified that, where Gilchrist fell, the walkway was elevated from 40 to 58 inches above the ground level.

sidewalk." A photograph of the site shows a pipe-like object protruding from the middle of the walkway. An expert witness testified that this protruding "plumbing clean-out plug," as well as the lack of a railing on the elevated walkway, are violations of certain building codes and the Americans with Disabilities Act.[3]

Gilchrist sued the owner of the property, Sky Property Management, LLC, and lessees Dahi Mahi, Inc., which operated the Exxon, and Meldi Sub, LLC, which operated the Subway. The operative complaint alleges three claims: (1) negligence based on the absence of a railing on the walkway and the lack of signs warning of the danger; (2) negligence per se based on the "dangerous condition" created by the walkway, in violation of the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Georgia Access to Use of Public Facilities by Persons with Disabilities Act; and (3) nuisance.

---

[3] This opinion was given an affidavit submitted by Timothy Thomas, Public Works Director of the City of Milledgeville, who visited the site after the accident. Thomas attested that the absence of "edge protection" violated "Section 1015, Guards (IBC) International Building Code" ; that the "plumbing cleanout plug" projected "above the sidewalk surface beyond the allowed maximum height" prescribed in "Section 303, (ICC) International Code Council, (ANSI) American National Standard Institute" ; and that "[t]hese violations also are violations of [the] ADA[.]"

4

All three defendants moved for summary judgment. Following a hearing, the trial court granted the defendants' motions in three separate orders. In each order, the court concluded that, Gilchrist was, at best, a licensee to whom the defendants could be liable only for willful or wanton injury, because he was not a customer on the property at the time of his injury. See OCGA § 51-3-2 (providing that premises owners are liable to licensees "only for willful or wanton injury"). Finding no evidence of any intentional or reckless conduct by the defendants that would give rise to a finding of "willful or wanton injury," the court concluded that there was no basis for imposing liability. The court's orders are silent on Gilchrist's claims for negligence per se and nuisance. Gilchrist appealed.

## Discussion

On appeal, orders granting or denying summary judgment are reviewed de novo. *Johnson v. Omondi*, 294 Ga. 74, 75 (751 SE2d 288) (2013). Summary judgment is appropriate where no genuine issues of material fact remain, such that the party seeking summary judgment is entitled to judgment as a matter of law. Id.

1. Gilchrist first contends that the trial court erred in granting summary judgment because there is a genuine issue of fact as to whether the defendants

5

breached their duty to prevent willful or wanton injury to him.[4] Gilchrist does not appear to dispute that he was a licensee on the property at the time of his accident, or that as a licensee, he was owed by the defendants only the duty to avoid inflicting willful or wanton injury. See OCGA § 51-3-2. Gilchrist contends that the defendants in fact breached that duty by maintaining the walkway in the condition it was in at the time of the accident.

To begin with, we agree that Gilchrist was a mere licensee on the property here. Our Code defines a "licensee" as a person who is not "a customer, a servant, [or] a trespasser"; who "[d]oes not stand in any contractual relation with the [premises] owner"; and who "[i]s permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification." OCGA § 51-3-2 (a). Whether an injured person is classified as a licensee on another's property—rather than an "invitee," to whom the proprietor generally owes a higher duty of care—depends on the person's purpose: whether the person "at the time of the injury had present

_____

[4] Although Gilchrist filed his opening brief one day late, we exercise our discretion to excuse the late filing. See Court of Appeals Rule 23 (a) (noting that failure to file a timely brief "*may* result in the dismissal of the appeal") (emphasis supplied); see also OCGA § 5-6-30 (providing that the rules governing appellate practice "shall be liberally construed so as to bring about a decision on the merits of every case").

6

business relations with the [proprietor] which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience [or for] business with others." *Stanton v. Griffin*, 361 Ga. App. 205, 207 (1) (863 SE2d 548) (2021) (citation and punctuation omitted). Here, Gilchrist went onto the gas station property only for an impromptu chat with a friend and did not himself transact any business there, so he was properly considered a licensee. See *Howard v. Gram Corp.*, 268 Ga. App. 466, 468 (602 SE2d 241) (2004) (holding that a plaintiff who was on the premises just to accompany her daughter and had no business of her own there was a licensee).

Because he was a licensee, the defendants owed Gilchrist only a duty to avoid inflicting "willful or wanton injury" on him. OCGA § 51-3-2 (b) ("The owner of [a] premises is liable to a licensee only for willful or wanton injury."). See *Stanton*, 361 Ga. App. 209 (2) (noting that the duty owed to licensees is merely "not to injure them wilfully or wantonly"); *Khalia, Inc. v. Rosebud*, 353 Ga. App. 350, 353 (1) (b) (836 SE2d 840) (2019) (defendant could be held liable to the licensee plaintiff "only for its 'willful or wanton' act or omission"). Conduct that is "willful" is intended to cause harm; conduct that is "wanton" reflects a recklessness that is "equivalent in spirit" to

7

an actual intent to cause harm. *Ga. Dep't of Transp. v. Strickland*, 279 Ga. App. 753, 754 (1) (632 SE2d 416) (2006).

The trial court concluded that Gilchrist's claims failed as a matter of law because he failed to introduce any evidence that the defendants acted with recklessness or any intent to cause harm. Gilchrist contends, however, that the trial court overlooked a line of cases holding that "it is usually wilful or wanton not to exercise ordinary care to prevent injury to a person who is known to be or may reasonably [be] expected to be within a hidden peril on one's premises." *Hartley v. Macon Bacon Tune, Inc.*, 234 Ga. App. 815, 817 (507 SE2d 259) (1998). Accord *Cooper v. Corporate Prop. Investors*, 220 Ga. App. 889, 891 (470 SE2d 689) (1996). Gilchrist contends that the defendants here owed a duty of ordinary care to protect licensees from "hidden perils" because the defendants could reasonably anticipate that pedestrians like Gilchrist would from time to time come on their property,

Gilchrist correctly recites the legal principle, but it does not help him here for the simple reason that neither of the hazards—the absence of a railing and the protruding cleanout plug—was a "hidden peril." Compare *Trulove v. Jones*, 271 Ga. App. 681, 682 (1) (610 SE2d 649) (2005) (duty of ordinary care did not apply because the absence of a railing on a backyard pool deck was not a "hidden peril"),

8

with *Cooper*, 220 Ga. App. at 891 (duty of ordinary care applied, whether plaintiff was an invitee or a licensee, where the hazard was obscured from view by the conditions on the property). Instead, as is apparent from the photograph of the accident scene , these hazards were open and obvious. See, e.g., *Crebs v. Bass Pro Outdoor World*, 360 Ga. App. 121, 123–24 (860 SE2d 802) (2021) (decorative fencing protruding into walkway of store was an open and obvious condition); *D'Elia v. Phillips Edison & Co.*, 354 Ga. App. 696, 699–700 (839 SE2d 721) (2020) ("lip" occurring at junction of walkway and parking lot was an open and obvious condition); *Simmons v. Prince*, 343 Ga. App. 175, 176–77 (1) (806 SE2d 627) (2017) (large gaps between railing balusters were an open and obvious condition); *Rowland v. Murphy Oil USA, Inc.*, 280 Ga. App. 530, 532–33 (634 SE2d 477) (2006) (signs placed in the path of gas station customers were an open and obvious condition). The duty of ordinary care that applies to "hidden perils" does not apply here.

Moreover, regardless of the level of duty owed, "a plaintiff is not entitled to recovery if . . . the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant." *D'Elia*, 354 Ga. App. at 698. Accord *Trulove*, 271 Ga. App. at 682 (1) ("where a licensee has equal knowledge of the dangerous condition . . . there is no liability to the licensee") (citation and punctuation omitted). This is

9

because "a landowner is not an insurer of the safety of those who venture upon his land." *Cooper*, 220 Ga. App. at 892. See *Rather v. Worrell*, 260 Ga. App. 174, 176 (581 SE2d 568) (2003) (affirming grant of summary judgment to defendant, holding that, because of plaintiff's equal knowledge, imposing liability on the defendant would "mak[e] [the defendant] an insurer of the premises"). Summary judgment is thus proper when "the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant." *Norman v. Jones Long Lasalle Americas, Inc.*, 277 Ga. App. 621, 624 (627 SE2d 382) (2006); accord *D'Elia*, 354 Ga. App. at 698.

Even absent evidence of his actual knowledge of a hazard, a plaintiff's equal knowledge will be presumed if the hazard was or should have been visible to him had he been exercising ordinary care. See *Crebs*, 360 Ga. App. at 124 (despite plaintiff's contention that she did not see the fence protruding into the store aisle, her claim failed as a matter of law where "the protruding fence and its potential danger would have been obvious and ascertainable with the use of ordinary care"); *D'Elia*, 354 Ga. App. at 700 (despite plaintiff's contention that she did not notice the defect, her claim failed as a matter of law because "any alleged hazard . . . was avoidable by [her] in the exercise of reasonable care"); *LeCroy v. Bragg*, 319 Ga. App. 884, 886–87 (1)

10

(739 SE2d 1) (2013) (despite plaintiff's contention that she did not realize a pothole was behind her, her claim failed as a matter of law because the hazard was open and obvious and nothing obstructed her view of it). See also *Stone Mountain Mem'l Ass'n v. Amestoy*, 337 Ga. App. 467, 473 (788 SE2d 110) (2016) (noting that "whether a dangerous condition is open and obvious depends on the objective knowledge of a reasonable person, not on the plaintiff's subjective knowledge"). And when a plaintiff claims he was prevented from seeing the hazard, he must show that the obstruction was "due to conditions within the defendants' control." *Norman*, 277 Ga. App. at 623–24. Accord *Ridley v. Dolgencorp*, 353 Ga. App. 561, 562 (839 SE2d 26) (2020) (plaintiff must show that his lack of knowledge of hazard was "due to the defendant's actions or to conditions under the defendant's control") (citation and punctuation omitted).

Here, the undisputed evidence shows that Gilchrist would have seen the hazards he points out had he exercised ordinary care. As just explained, both the protruding cleanout plug and the lack of railing around the edge of the walkway were open and obvious conditions that any person exercising ordinary care would have seen. See, e.g., *Crebs*, 360 Ga. App. at 123; *D'Elia*, 354 Ga. App. at 698; *Trulove*, 271 Ga. App. at 682 (1). Although Gilchrist testified that he did not know what made

11

him trip, he also testified that he generally was able to see obstructions in his path as he walked. And if Gilchrist's vision problems interfered with his ability to see the hazards in his path, this impairment was not a "condition[] within the defendants' control" for which they may be held liable. *Norman*, 277 Ga. App. at 623; see also *Ridley*, 353 Ga. App. at 562.

The undisputed evidence shows that Gilchrist also failed to exercise due care himself, in that, despite his visual impairment, he chose to walk alone and unassisted. This, too, precludes recovery. See *Rather,* 260 Ga. App. at 176 (affirming grant of summary judgment to defendant where frail and elderly plaintiff attempted, without assistance, to climb a step without a handrail).

Despite these obstacles to recovery, Gilchrist contends that the defendants are deemed to have had knowledge superior to his because of their alleged violations of the ADA and building codes. In support of this contention, Gilchrist cites *Val D'Aosta Co. v. Cross*, 241 Ga. App. 583 (526 SE2d 580) (1999), and a specially concurring opinion in *Davis v. GBR Props., Inc.*, 233 Ga. App. 550 (504 SE2d 204) (1998), but *Val D'Aosta*'s narrow rule does not apply here.

In *Val D'Aosta*, a 4-3 majority of this Court held that the trial court properly denied the defendant's motion for summary judgment where the disabled plaintiff was

12

ejected from her wheelchair when its front wheels caught a "lip" between the edge of a disability access ramp and the parking lot of the motel owned by the defendant. Id. at 584. Citing evidence that this "lip" violated certain standards of the American National Standards Institute and noting that these standards were enacted to comply with the ADA and its Georgia counterpart, OCGA § 30-3-1 et seq., the Court held that Val D'Aosta had superior knowledge of that condition:

> As a matter of law, Val D'Aosta Company, as owner of a place of public accommodation and a public building, had knowledge of the condition of the disabled access ramp that was superior to the knowledge of the plaintiff[.] . . . This is because OCGA § 30-3-8, with criminal sanctions for non-compliance, mandated compliance with any regulation promulgated under OCGA § 30-3-1 et seq. by the owner/occupier and required specific knowledge of the condition of the ramp and its compliance or non-compliance by the owner/occupier.

Id. (Footnotes omitted.) In other words, this Court held that because owners of public accommodations are subject to specific regulations that ensure that their properties are accessible, a proprietor is deemed as a matter of law to have superior knowledge of "defect[s] specifically prohibited by [those] regulations." Id. at 583. See also *Davis*, 233 Ga. App. at 553 (1) (Eldridge, specially concurring) (proposing the rule

13

adopted in *Val D'Aosta*, opining that any proprietor who is subject to Georgia's ADA counterpart should be chargeable with "mandated knowledge" that is "superior" to that of its invitees for premises liability purposes).

But *Val D'Aosta*'s "mandated knowledge" rule has not since been relied on in any published opinion, and it does not apply here. Unlike in *Val D'Aosta*, the conditions at issue here were not defects in a structure designed specifically to comply with disability access regulations. See *Val D'Aosta*, 241 Ga. App. at 583 (limiting the case's holding to the "facts and circumstances" presented, which the Court described as involving "a specific static defect that the regulations and guidelines prohibit as dangerous, when the owner/occupier is under a continuing statutory mandate to provide a safe handicap access ramp"). Moreover, Gilchrist has identified no specific provision of either the ADA or its Georgia counterpart that the defendants have violated. The only hint of any such violation is Timothy Thomas's generalized statement that the defects "are violations of [the] ADA." But that generalized statement is not enough to bring *Val D'Aosta* into play, because it gives us no indication of what particular provisions of law have allegedly been violated, and thus no evidence we could rely on to conclude that the defects here were specifically "prohibit[ed] as dangerous"—the linchpin of *Val D'Aosta*'s reasoning.

14

Under these circumstances, *Val D'Aosta*'s rule that would impute superior knowledge to the defendants as a matter of law does not apply.

In short, the undisputed evidence here shows that Gilchrist would have seen the hazards had he exercised ordinary care, so he had constructive knowledge of those hazards at least equal to that of the defendants. This precludes recovery on his negligence claim. Although the trial court did not grant summary judgment on this separate basis, "[w]e may affirm the trial court's order if it is right for any reason." *Crebs*, 360 Ga. App. at 125, n.5. We thus hold that the trial court properly granted summary judgment on Gilchrist's negligence claim.

2. Gilchrist's claim of negligence per se suffers the same fate. "Generally, negligence per se arises when a statute or ordinance is violated." *Norman*, 277 Ga. App. at 627 (2) (b) (citation and punctuation omitted). Here, the amended complaint asserts negligence per se based on violations of the ADA, the Rehabilitation Act of 1973, and Georgia's ADA counterpart. The ADA is the only possible basis on which Gilchrist's negligence per se claim may survive because Gilchrist has offered no evidence that the hazards on the defendants' property violated either of the latter two laws. But even assuming that Gilchrist could otherwise establish negligence per se

based on a violation of the ADA,[5] that claim still fails as a matter of law under the equal knowledge rule. See *Simmons*, 343 Ga. App. at 178 (2) (b) (holding that the plaintiff's equal knowledge of the hazard entitled defendants to summary judgment on her negligence per se claim); *Norman*, 277 Ga. App. at 629 (2) (c) (same); *Trulove*, 271 Ga. App. at 682 (2) (same). Summary judgment was therefore proper as to this claim. See *Crebs*, 360 Ga. App. at 125, n.5 (grant of summary judgment may be affirmed as right for any reason).[6]

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur.*

---

[5] To establish negligence per se, a plaintiff must show that the defendants violated a duty imposed by law; the plaintiff "falls within the class of persons [the law] was intended to protect"; his injury "was the harm the [law] was intended to guard against"; and the violation proximately caused the injury. *Norman*, 277 Ga. App. at 628 (2) (b).

[6] Gilchrist has waived any arguable error as to his nuisance claim by failing to enumerate or argue any error in its disposition. See *Hildebrand v. City of Warner Robins*, 354 Ga. App. 164, 168 (840 SE2d 503) (2020).